FILED IN MY OFFICE
DISTRICT COURT CLERK
5/15/2013 1:04:37 PM
GREGORY T. IRELAND

Andrea Salas

SECOND JUDICIAL DISTRICT COURT
COUNTY OF BERNALILLO
STATE OF NEW MEXICO

CHARLES BROWDER, in his individual
capacity and as Personal Representative
of The Estate of ASHLEY BROWDER,
LINDSAY BROWDER and DONNA
BROWDER,

       Plaintiffs,

v.                      No. D-202-CV-2013-04260

CITY OF ALBUQUERQUE,
ALBUQUERQUE POLICE
DEPARTMENT, RAYMOND
SCHULTZ in his capacity as APD
Police Chief, and ADAM CASAUS
in his individual capacity,

       Defendants.

### COMPLAINT FOR WRONGFUL DEATH, PERSONAL INJURY AND LOSS OF CONSORTIUM DUE TO CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983; NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION; AND RECKLESS CONDUCT

Plaintiffs Charles Browder, individually and as Personal Representative of The Estate of

Ashley Browder, Lindsay Browder and Donna Browder state their Complaint for Damages against

Defendants by and through their attorneys of record **THE LAW OFFICE OF BRIAN K.**

**BRANCH** (Brian K. Branch and Sean P. McAfee) and **ERIK B. THUNBERG, ESQ.** (Erik B.

Thunberg), as follows:

### PARTIES, JURISDICTION AND VENUE

1.     Ashley Browder was a resident of the City of Albuquerque, County of Bernalillo,

State of New Mexico at all times material to this Complaint.



EXHIBIT
A

2.      Lindsay Browder was a resident of City of Albuquerque, County of Bernalillo, State of New Mexico at the time of the events complained of herein, and now resides in Gardnerville, Nevada.

3.      Charles Browder was and is a resident of the City of Albuquerque, County of Bernalillo, State of New Mexico at all times material to this Complaint.

4.      Donna Browder was a resident of Gardnerville, Nevada, at all times material to this Complaint.

5.      Defendants City of Albuquerque and Albuquerque Police Department was a governmental entity and a subdivision thereof, respectively, as set forth under the New Mexico Tort Claims Act, *N.M.S.A. §41-4-1 et. seq. 1978* at all times material to this Complaint.

6.      Defendant Adam Casaus was a resident of the City of Albuquerque, County of Bernalillo, State of New Mexico at all times material to this Complaint.

7.      Defendant Adam Casaus was at all times material to this Complaint an employee of Defendant Albuquerque Police Department but is joined in his individual capacity.

8.      Defendant Adam Casaus was at all times material to this Complaint acting within the course and scope of his employment as a law enforcement officer and agent of Defendants City of Albuquerque and Albuquerque Police Department.

9.      Defendant Adam Casaus was at all times material to this Complaint acting under color of state law.

10.     Jurisdiction and venue are proper pursuant to NMSA 1978 § 41-4-18 of the New Mexico Tort Claims Act, common law, and NMSA 1978 § 38-3-1(A), as all of the parties except for Donna Browder resided or do business in New Mexico, and the acts complained of occurred

exclusively in Bernalillo County.

11.     Charles Browder has been appointed as the personal representative for the Estate of Ashley Browder by the Second Judicial District Court in Cause Number D-202-PB-201300139.

### FACTUAL BACKGROUND AND ALLEGATIONS COMMON TO ALL COUNTS

12.     Sergeant Adam Casaus walked out of the Bernalillo County Sheriff Department ("BCSO") Communications Center at approximately 1:24 a.m. on Saturday, February 10, 2013.

13.     After leaving the BCSO Communications Center at approximately 1:24 a.m. on Saturday, February 10, 2013, Sergeant Casaus got into his marked Albuquerque Police Department ("APD") Chevrolet Tahoe and proceeded to drive South on Holly Ave NE, and then west on Paseo Del Norte Blvd.

14.     Sergeant Casaus' duty shift on February 9, 2013, was from 3 p.m. to 11 p.m.

15.     Sergeant Casaus' last call during his duty shift on February 9, 2013, was cleared at 9:50 p.m.

16.     Sergeant Casaus was in uniform when he left the BCSO Communications Center at 1:24 a.m. and drove away in his APD patrol vehicle.

17.     Sergeant Casaus' duty shift was scheduled to end at 11 p.m. on February 9, 2013.

18.     Sergeant Casaus was in uniform and driving his duty vehicle when he left the BCSO Dispatch Center at 1:24 a.m. on February 10, 2013.

19.     Sergeant Casaus was captured on video walking out of the BCSO Communications Center at 1:24 a.m. on February 10, 2013

20.     At about 1:32 a.m. on February 10, 2013, Sergeant Casaus used his police radio to report his involvement in a collision with injuries at the intersection of Eagle Ranch Road NW

and Paseo Del Norte Blvd NW.

21.     Upon information and belief, prior to calling in the collision on his police radio, Sergeant Casaus made at least one call on his cell phone.

22.     After Sergeant Casaus called in the crash, various police and rescue units were dispatched to the scene of the crash.

23.     BCSO dispatch received the call at 1:32 a.m. and initiated the incident for response at 1:33 a.m.

24.     Upon information and belief the collision occurred between 1:31 and 1:32 a.m. on February 10, 2013.

25.     The distance between the BCSO Communications Center and the intersection of Eagle Ranch NW and Paseo Del Norte NW, as driven by Sergeant Casaus on February 10, 2013, is approximately 8.8 miles.

26.     There are 10 traffic signals, not including the one at Eagle Ranch NW and Paseo Del Norte NW, on Paseo Del Norte between BCSO Communications Center and the intersection of Eagle Ranch and Paseo Del Norte.

27.     Sergeant Casaus drove the approximately 8.8 miles between BCSO Communications Center and the intersection of Eagle Ranch NW and Paseo Del Norte NW in eight minutes or less.

28.     Sergeant Casaus was traveling over the posted safe speed limit when he entered the intersection of Eagle Ranch NW and Paseo Del Norte NW, and upon information and belief was speeding all, or substantially all, of the way from the BCSO Communications Center. In so doing, Sergeant Casaus was intentionally misusing his police vehicle.

29.     At approximately 1:31 or 1:32 a.m. on February 10, 2013, Lindsay Browder, with her sister Ashley in the front passenger seat, drove her 1999 Honda CR-V northbound on Eagle Ranch NW into the intersection with Paseo Del Norte on a solid green light.

30.     Sergeant Casaus intentionally drove his duty vehicle into the intersection on a solid red light, and crashed into the passenger side of the Honda CR-V.

31.     Sergeant Casaus did not slow down approaching or entering the intersection and was traveling in excess of 60 miles per hour at the time of impact.

32.     Sergeant Casaus had his emergency lights engaged prior to entering the intersection.

33.     Sergeant Casaus did not have his siren engaged approaching or entering the intersection.

34.     Ashley Browder died on scene as a result of injuries suffered in the collision with Sergeant Casaus' duty vehicle.

35.     Lindsay Browder was seriously injured in the collision with Sergeant Casaus' duty vehicle.

36.     Sergeant Casaus told accident investigator BCSO deputy Leonard Armijo that at the time of he entered the intersection and collided with the Browder vehicle, he had been following another vehicle he believed was operating in a dangerous manner.

37.     Sergeant Casaus did not call or radio in about the vehicle he allegedly was following prior to the collision.

38.     Sergeant Casaus' failure to call or radio about a vehicle he suspected of dangerous or illegal activity was contrary to APD policy, specifically APD Procedural Order 2-15-3(A).

39.     The collision investigator, Deputy Armijo attempted, but was unable, to confirm Casaus was following a another vehicle.

40.     Sergeant Casaus described the alleged vehicle to Deputy Armijo as a dark-colored sedan with tall, skinny tail lights.

41.     Sergeant Casaus stated to Deputy Armijo that he first observed the dark sedan traveling west on Paseo Del Norte in the vicinity of Edith or Second Street.

42.     Sergeant Casaus stated he was traveling in excess of the speed limit westbound on Paseo Del Norte and continued to observe the dark sedan travel westbound in front of him on Paseo Del Norte past the Coors Blvd NW exit.

43.     Two eye-witnesses to the collision and events immediately preceding the collision refuted Casaus' story about Sergeant Casaus following another vehicle.

44.     One of the two witnesses was Jana Villanueva, who was stopped for the red light in the right lane of westbound Paseo Del Norte at the intersection of Eagle Ranch NW and Paseo Del Norte NW when the collision occurred.

45.     Ms. Villanueva was driving a dark Cadillac sedan with tall, skinny tail lights.

46.     Ms. Villanueva had not been driving on Paseo Del Norte where Sergeant Casaus stated he saw the dark sedan he was allegedly following.

47.     Ms. Villanueva entered Paseo Del Norte via an on-ramp from Northbound Coors Blvd, less than a quarter of a mile before the intersection of Eagle Ranch and Paseo Del Norte.

48.     Deputy Armijo confirmed Ms. Villanueva's route via intersection camera video footage on Coors Blvd NW.

49.     Michael Marthe was driving westbound on Paseo Del Norte NW east of Coors

Blvd. prior to the collision when Sergeant Casaus sped past his vehicle.

50.     Sergeant Casaus passed Mr. Marthe's vehicle traveling west on Paseo Del Norte NW in excess of the speed limit prior to reaching the Coors Blvd NW exit.

51.     Mr. Marthe saw Sergeant Casaus' vehicle in his rearview mirror, catching up to him on westbound Paseo Del Norte.

52.     Sergeant Casaus engaged the emergency lights on his police vehicle at or near the time he passed Mr. Marthe on Paseo Del Norte NW, prior to reaching the Coors Blvd. NW exit.

53.     Mr. Marthe did not see any other vehicles besides Sergeant Casaus' duty vehicle traveling west on Paseo Del Norte between the Second Street exit and Coors Blvd NW.

54.     No other vehicles besides that of Sergeant Casaus passed Mr. Marthe on Paseo Del Norte between Second Street and when Sergeant Casaus passed Marthe near Coors Blvd.  .

55.     There are no exit ramps on westbound Paseo Del Norte between Second Street, where Sergeant Casaus claims to have first seen the alleged dark color sedan, and Coors Blvd. where Sergeant Casaus passed Mr. Marthe.

56.     After Sergeant Casaus passed Mr. Marthe, Mr. Marthe observed Sergeant Casaus enter the intersection of Paseo Del Norte and Eagle Ranch Rd NW.

57.     Mr. Marthe did not observe brake lights on Sergeant Casaus' vehicle at any time prior to or including when Sergeant Casaus entered the intersection.

58.     Mr. Marthe did not hear Sergeant Casaus turn on his siren at any time prior to the collision.

59.     Mr. Marthe observed Sergeant Casaus to be traveling at a high rate of speed, well over the posted speed limit

60.     Sergeant Casaus did not slow down prior to entering the intersection.

61.     Sergeant Casaus did not apply his brakes prior to entering the intersection.

62.     The information downloaded from the data recorder, or, "black box" in Sergeant Casaus' duty vehicle indicated Sergeant Casaus was pressing the accelerator on his vehicle for at least 2.5 seconds leading up to and including the moment of impact.

63.     Sergeant Casaus intentionally entered the intersection at an unsafe speed which was reckless under the circumstances.

64.     In entering the intersection on a red light and without slowing down, Sergeant Casaus violated numerous APD policies and procedures, including but not necessarily limited to 2-56-1 through 2-56-7 of the APD Procedural Orders.

65.     Sergeant Casaus told accident investigator he turned on his siren before entering the intersection.

66.     Michael Marthe, who was behind Sergeant Casaus did not hear Sergaent Casaus' siren.

67.     Jana Villanueva, who was stopped for a red light in a westbound lanes of Paseo Del Norte at the intersection with Eagle Ranch Road did not hear Sergeant Casaus' siren.

68.     Jana Villanueva's son, Leonard Villanueva, seated in the front passenger seat of Ms. Villanueva's car, did not hear a siren.

69.     Lindsay Browder, who was northbound on Eagle Ranch Road entering the Paseo Del Norte intersection on a green light, did not hear a siren.

70.     In entering the intersection on a red light without slowing down and without activating his siren, Sergeant Casaus violated state laws, including but not necessarily limited to,

NMSA 1978 §§ 66-7-6(B)(2), 66-7-6(B)(3), 66-7-6(C), and 66-7-6(D).

71.     Sergeant Casaus had no legitimate law enforcement objective in speeding through the intersection of Eagle Rock NW and Paseo Del Norte NW on a red light, and therefore intentionally misused his police vehicle.

72.     Sergeant Casaus made the deliberate, intentional, conscious and reckless decision to drive in excess of the posted speed limit for all or substantially all of the approximately 8.8 miles between the BCSO Communications Center and the intersection of Paseo Del Norte NW and Eagle Ranch NW.

73.     Sergeant Casaus made the deliberate, intentional, conscious and reckless decision to ignore the red light at the intersection of Paseo Del Norte NW and Eagle Ranch NW.

74.     Sergeant Casaus, in speeding and running at least one red light with no legitimate law enforcement objective, made the deliberate, intentional, conscious and reckless decision to ignore and violate numerous APD procedures and state laws.

75.     Sergeant Casaus' actions in speeding and ignoring traffic signals without having a legitimate reason to do so were reckless, willful, deliberately indifferent to the rights and safety of other motorists, and constitute an intentional misuse of his APD vehicle.

76.     As a result of entering the intersection on a red light without slowing down and without activating his siren and crashing into Lindsay Browder's vehicle, killing Ashley Browder and seriously injuring Lindsay Browder, Sergeant Casaus was charged with reckless vehicular homicide in violation of NMSA 1978 § 66-08-101(A), and reckless great bodily injury by vehicle in violation of NMSA 1978 § 66-08-101(B).

## COUNT I: VIOLATIONS OF ASHLEY BROWDER
## AND LINDSAY BROWDER'S CIVIL RIGHTS BY ADAM CASAUS

77.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

78.     Sergeant Casaus' decision to speed and run at least one red light while off duty and with no legitimate law enforcement objective constitutes deliberate indifference to the rights of other motorists, including Lindsay and Ashley Browder.

79.     Sergeant Casaus' intentional misuse of his police vehicle and deliberate indifference to the rights of other motorists, including Lindsay and Ashley Browder, under the circumstances constitutes conscience-shocking behavior as that term is defined in County of Sacramento v. Lewis, 118 S.Ct. 1708, 523 U.S. 833, 140 L.Ed.2d 1043 (1998) and Green v. Post, 574 F.3d 1294 (10th Cir., 2009).

80.     Sergeant Casaus' fabrication of a non-existent law-enforcement objective in speeding and running at least one red light is further reinforcement of the intentional misuse of his police vehicle and  the conscience-shocking nature of his conduct.

81.     Sergeant Casaus' willful failure to follow traffic laws and APD policies in speeding and running red lights while off duty and with no legitimate law enforcement purpose was a blatantly arbitrary and unjustified misuse of the powers of government.

82.     In the absence of any emergency or legitimate law enforcement objective, Sergeant Casaus' actions in intentionally speeding and running red lights in violation of APD policy and state law demonstrated conscious, deliberate indifference to the extreme risk of very serious injury or death to citizen's in Ashley Browder and Lindsay Browder's position, the motoring public.

83.     Sergeant Casaus' deliberate indifference to the extreme risk of serious injury or death to persons such as the Browders was willful, wanton, egregious, outrageous, shocking to the

conscience, and in gross disregard of the Browders' rights guaranteed by 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

84.     Sergeant Casaus, in exhibiting deliberate indifference to the extreme risk of very serious injury or death to other motorists by ignoring APD policy and state law and with no legitimate law enforcement purpose or exigency of any kind, violated the constitutional rights of Ashley Browder and Lindsay Browder under the Fourteenth Amendment when he sped through a red light traveling at more than 60 miles per hour, causing death and serious injury.

85.     Sergeant Casaus' deliberately indifferent, intentional and reckless behavior was ongoing from the time he left the BCSO Communications Center and at all times was informed by calculation and individual choice to deliberately ignore the public safety in the absence of any emergency or legitimate law enforcement objective.

86.     Nothing prevented Sergeant Casaus from adhering to APD policy and state traffic law while he drove the 8.8 miles between when he left the BCSO Communications Center and when he killed Ashley Browder and seriously injured Lindsay Browder.

87.     Sergeant Casaus, in uniform and driving his marked APD duty vehicle and using emergency lights without a legitimate law-enforcement reason to do so, exercised his power improperly, irresponsibly, recklessly and utterly without justification.

88.     The Constitutional rights of Ashley and Lindsay Browder not to be killed and injured by a police officer acting under color of state law acting willfully and deliberately indifferent to the extreme risk of the harm he did in fact cause by ignoring traffic laws and departmental policies and driving in an unsafe manner without any justification were clearly established at the time of the collision on February 10, 2013, as recognized by the Supreme Court

11

in County of Sacramento v. Lewis, 118 S.Ct. 1708, 523 U.S. 833, 140 L.Ed.2d 1043 (1998); most recently by the 10th Circuit in Green v. Post, 574 F.3d 1294 (10th Cir., 2009), and as far back as 1996 in Williams v. Denver, City and County of, 99 F. 3d 1009.

89.     Sergeant Casaus was on notice based on a number of reported decisions including, but not limited to, Green v. Post, Williams v. City and County of Denver, 99 F.3d 1009 (C.A.10 (Colo.), 1996), and the Supreme Court's decision in County of Sacramento v. Lewis, 118 S.Ct. 1708, 523 U.S. 833, 140 L.Ed.2d 1043 (1998), that his conscious and ongoing decision to speed and run red lights in his police vehicle while off duty and in the absence of **any** legitimate law enforcement or emergency purpose, was not only willfully and deliberately indifferent to the health and safety of the citizens he was paid to protect; but also that his unjustified, reckless and willful behavior violated the constitutional rights of those citizens.

90.     The Browders' right not to be killed or injured by a police officer driving in a dangerous and unlawful manner, including deliberately speeding and running a red light, in the absence of any legitimate law enforcement objective or exigency whatsoever has been clearly established, and Sergeant Casaus was or should have been on notice of the Browders' rights under the 14th Amendment of the United States Constitution.

91.     Sergeant Casaus' deliberate and unjustified violation of Ashley Browder's and Lindsay Browder's 14th amendment rights was the direct and proximate cause of the death of Ashley Browder and serious injury to her sister, Lindsay Browder, and resulting damages to the Estate of Ashley Browder and to Lindsay Browder.

92.     The conduct of Sergeant Casaus was so extreme and reckless that punitive damages are warranted in an amount to be determined by the trier of fact.

WHEREFORE, Plaintiffs request compensatory damages against Defendants including, but not limited to, all damages under the New Mexico Wrongful Death Act, past and future medical expenses, funeral and related expenses, past and future loss of earnings and earning capacity, property damage, past and future physical pain and suffering, past and future loss of enjoyment of life, past and future loss of household services, and loss of association and consortium in amounts to be determined at trial. Plaintiffs further request the award of punitive damages, attorneys' fees, costs and pre- and post-judgment interest as provided for by law.

### COUNT II: VIOLATIONS OF ASHLEY BROWDER AND LINDSAY BROWDER'S CIVIL RIGHTS BY CITY OF ALBUQUERQUE, ALBUQUERQUE POLICE DEPARTMENT, AND APD CHIEF RAYMOND SCHULTZ

93.    Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

94.    Upon information and belief, prior to and including the events of February 10, 2013, wherein Sergeant Casaus deliberately ran a red light despite the absence of any exigency or legitimate law enforcement purpose, there have been multiple reported instances of Albuquerque Police Department vehicles running red lights without a legitimate law enforcement purpose.

95.    Multiple instances of APD officers running red lights without a legitimate law enforcement purpose constitutes a widespread practice as that term is legally defined.

96.    Upon information and belief APD and Chief Raymond Schultz and/or the City of Albuquerque has been made aware, prior to February 10, 2013, of a widespread custom and practice of its officers driving their duty vehicles through red lights, or otherwise driving their vehicles in an unsafe and illegal manner in the absence of any exigency or legitimate law enforcement purpose.

97.    Upon information and belief, neither APD and/or Chief Schultz nor the City has

not taken appropriate or sufficient steps to curtail this widespread practice of its officers deliberately running red lights or otherwise ignoring traffic laws and the public safety without the justification of a legitimate law enforcement purpose.

98.    Upon information and belief, neither APD and/or Chief Schultz nor the City has provided its police officers with adequate training sufficient to prevent its officers from engaging in the widespread practice of ignoring traffic laws and safety devices to the detriment of the safety of the motoring public.

99.    The conduct of APD and/or Chief Schultz and the City as set forth above was willful, wanton, reckless and such conduct was committed by employees of APD and/or the City while acting in a managerial capacity or was acquiesced to or ratified by APD and/or Schultz and/or the City warranting an award of punitive damages in an amount to be determined by the trier of fact.

WHEREFORE, Plaintiffs request compensatory damages against Defendants including, but not limited to, all damages under the New Mexico Wrongful Death Act, economic damages, past and future loss of earnings, past and future physical pain and suffering, past and future loss of enjoyment of life, past and future loss of household services, past and future loss of association and consortium, in amounts to be determined at trial. Plaintiffs further request the award of punitive damages as well as attorneys' fees, costs and pre- and post-judgment interest as provided for by law.

## COUNT III: NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION

100.    Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

101.    The individual conduct of Sergeant Adam Casaus at issue in this lawsuit is, in part,

his deliberate, willful and wanton failure to abide by APD policy and state laws with respect to safe driving and traffic control devices.

102.   Prior to his employment with APD, which commenced about 13 years prior to February 10, 2013, Adam Casaus received, and was found guilty of, separate motor vehicle citations for speeding, careless driving, failing to yield right of way at a traffic control sign, and also for failure to obey traffic instructions.

103.   Prior to February 10, 2013, Sergeant Casaus investigated an accident involving another APD officer's alleged reckless driving stemming from a November, 2010 accident involving a speeding APD patrol vehicle and four other cars.

104.   The report filed by Segeant Casaus exonerated the APD officer involved despite the finding the officer had been driving 80 miles per hour on a city street with a 25 miles per hour speed limit, and was not responding to any emergency or law enforcement situation.

105.   Sergeant Casaus' report prompted an official citizen's complaint to APD alleging Casaus' attempted cover-up of officer liability for the accident.

106.   Chief Schultz was specifically aware of Sergeant Casaus' investigation and a citizen's complaint concerning same and wrote a letter to the citizen indicating he would take no action.

107.   Upon information and belief APD and/or Chief Schultz and the City of Albuquerque knew or should have known of Adam Casaus' propensity for disregarding traffic laws.

108.   Upon information and belief APD and/or Chief Schultz and the City of Albuquerque knew or should have known of Adam Casaus' propensity for covering up and/or

being dishonest about APD disregard for traffic laws and the safety of the motoring public.

109.    On February 10, 2013, Sergeant Adam Casaus deliberately drove well in excess of the speed limit and ran a red light, causing the death of Ashley Browder and serious injury to Lindsay Browder.

110.    This was conduct consistent with conduct of which APD and Chief Schultz knew or should have known Adam Casaus engaged in prior to his employment with APD

111.    In the aftermath of causing the death of Ashley Browder and serious injury to Lindsay Browder, Sergeant Casaus made up a story about following another vehicle in a dishonest attempt to excuse his unlawful, reckless, willful and wanton conduct.

112.    This was conduct consistent with prior conduct of Sergeant Casaus in attempting to cover-up and/or justify reckless conduct on the part of APD officers.

113.    Plaintiffs specifically reserve the right to amend this allegation to include additional instances of conduct which did or should have put APD and/or the City of Albuquerque on notice of Adam Casaus' lack of fitness to be employed as a law enforcement officer, specifically including but necessarily limited to being due to disregard for traffic laws and public safety, and/or propensity for dishonesty and covering up his misconduct and that of his fellow APD officers.

114.    Defendants City of Albuquerque and APD and Chief Schultz were negligent in the hiring, training, supervision and retention of Albuquerque Police Sergeant Adam Casaus, who recklessly caused the death of Ashley Browder and serious injury to Lindsay Browder by deliberately speeding and ignoring traffic control devices despite the complete absence of legitimate law enforcement objectives or exigencies of any kind, and then made up a story to try

16

and excuse his reckless and criminal behavior.

115.    Defendants' negligence includes, but is not necessarily limited to:

a.    inadequate screening of Adam Casaus as a prospective employee/patrol officer to be entrusted with a patrol vehicle.

b.    inadequate management, training and enforcement of policies regarding officer's use of duty vehicles, including adherence to all applicable laws and APD policies.

c.    inadequate training and supervision of officers with respect to the importance to the public safety of officers adhering to applicable laws and APD policies with respect to operation of motor vehicles.

116.    As a proximate result of Defendants' negligence in hiring, training, supervision and retention of Albuquerque Police Officers such as Adam Casaus, Plaintiffs have suffered damages including Wrongful Death, past and future loss of earnings, past and future loss of enjoyment of life, past and future pain and suffering, funeral expenses, past and future medical costs, and past and future loss of consortium.

117.    The conduct of APD, Chief Schultz and the City as set forth above was willful, wanton, reckless and such conduct was committed by employees of APD and/or the City while acting in a managerial capacity or was acquiesced to or ratified by APD and/or the City warranting an award of punitive damages in an amount to be determined by the trier of fact.

WHEREFORE, Plaintiffs request compensatory damages against Defendants including, but not limited to, all damages under the New Mexico Wrongful Death Act, economic damages, past and future  physical pain and suffering, past and future loss of enjoyment of life, past and future loss of household services, past and future loss of association and consortium, in amounts

to be determined at trial. Plaintiffs further request the award of punitive damages as well as attorneys' fees, costs and pre- and post-judgment interest as provided for by law.

## COUNT IV: NEGLIGENCE AND RECKLESS CONDUCT OF ADAM CASAUS AGAINST THE CITY OF ALBUQUERQUE AND ALBUQUERQUE POLICE DEPARTMENT

118.   Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

119.   The above-described actions by Sergeant Casaus, in uniform and in is duty vehicle, at a minimum constitute negligent and also reckless operation of a motor vehicle, subjecting the Defendant City of Albuquerque to liability under the New Mexico Tort Claims Act, NMSA 1978 § 41-4-1 *et seq.*

120.   Defendant City of Albuquerque is specifically subject to liability for the damages caused to Plaintiffs by Sergeant Casaus pursuant to NMSA 1978 §§ 41-4-5 and 41-4-12, the respective exceptions for liability for operation of a motor vehicle and for deprivation of constitutional rights by law enforcement officers.

121.   The Defendant the City of Albuquerque and the Albuquerque Police Department had actual notice of the likelihood that litigation may ensue as a result of the incident which is the subject matter of this litigation in compliance with NMSA 1978 §41-4-16.

122.   In addition to acts previously complained of herein, on February 10, 2013, Sergeant Casaus while in uniform and driving his APD-issued duty vehicle, operated his vehicle in a careless, reckless and willfully wanton manner, specifically failing to:

a.   Keep a proper lookout

b.   Operate his vehicle in a reasonably prudent manner

c.   adhere to and follow applicable traffic laws and traffic regulation devices,

13

including but not necessarily limited to speeding and running a red light at the intersection of Eagle Ranch Rd. NW and Paseo Del Norte NW.

d.  Make sure there was no oncoming traffic before entering the intersection of Eagle Ranch NW and Paseo Del Norte NW, e.g. failing to clear the intersection.

e.  Yield the right of way

123.  As a direct and proximate result of the aforementioned negligent and reckless acts and/or omissions of the Defendant Adam Casaus, Ashley Browder was killed, and Lindsay Browder suffered serious injuries which in turn caused her to incur medical and related expenses and bills and which will continue to cause her to incur medical and related expenses in the future all in an amount not presently determinable but to be proven at the time of trial.

124.  The aforementioned negligent and reckless acts and/or omissions of the Defendant Adam Casaus also caused all Plaintiffs extreme emotional and psychological anguish, pain and suffering which is ongoing and will continue in the future.

125.  The aforementioned negligent and reckless acts and/or omissions of the Defendant Adam Casaus also caused Plaintiffs Charles Browder, Donna Browder and Lindsay Browder to suffer the loss of society and companionship of their daughter and sister, Ashley Browder.

126.  The aforementioned negligent and reckless acts and/or omissions of the Defendant Adam Casaus also caused Plaintiff Lindsay Browder to suffer a loss of the value of enjoyment of life and recreation which will continue into the future.

127.  The aforementioned negligent and reckless acts and/or omissions of the Defendant Adam Casaus also caused Plaintiff Lindsay Browder to suffer physical pain and suffering which will continue into the future.

128.   The aforementioned negligent and reckless acts and/or omissions of the Defendant Adam Casaus also caused Plaintiff Lindsay Browder to suffer a loss of earnings and other benefits which will continue into the future.

129.   The aforementioned negligent and reckless acts and/or omissions of the Defendant Adam Casaus also caused Plaintiff the Estate of Ashley Browder to suffer a loss of earnings and other benefits which will continue into the future.

130.   The aforementioned negligent and reckless acts and/or omissions of the Defendant Adam Casaus also caused Plaintiff the Estate of Ashley Browder to suffer a loss of enjoyment of life which will continue into the future.

131.   The aforementioned negligent and reckless acts and/or omissions of the Defendant Adam Casaus also caused Plaintiff the Estate of Ashley Browder to suffer a loss of household service which will continue into the future.

132.   The aforementioned negligent and reckless acts and/or omissions of the Defendant Adam Casaus also caused Plaintiff the Estate of Ashley Browder to incur funeral and related expenses.

133.   The aforementioned negligent and reckless acts and/or omissions of the Defendant Adam Casaus also caused Plaintiffs Charles Browder. Donna Browder and  Lindsay Browder to suffer the loss association, society and consortium as those terms are legally defined and asuch losses will continue into the future.

134.   In addition to the negligent, reckless and willfully wanton manner in which Adam Casaus operated the 2007 Chevrolet SUV, these acts and/or omissions were in violation of certain New Mexico State Statutes, Albuquerque City Ordinances, and APD policies which were in force

and effect on February 10, 2013, and such Statutes had the purpose of protecting such people as the Plaintiffs from the type of harm they suffered.  As such, violation of these specific Statutes and Ordinances constitutes negligence "per se" as that term is legally defined which likewise proximately caused the injury and damages to the Plaintiffs.

135.    Plaintiffs are filing contemporaneously with this Complaint a six (6) person jury demand.

WHEREFORE, Plaintiffs request compensatory damages against Defendants including, but not limited to, all damages under the New Mexico Wrongful Death Act, economic damages, past and future loss of earnings, past and future  physical pain and suffering, funeral and related expenses, past and future loss of enjoyment of life, past and future loss of household services, past and future loss of association and consortium, in amounts to be determined at trial.as well costs and pre- and post-judgment interest as provided for by law.

## CONCLUSION

WHEREFORE, as set forth above, Plaintiffs request damages be awarded against Defendants including, but not limited to, all damages under the New Mexico Wrongful Death Act; economic damages including but not limited to medical expenses, funeral and related expenses, property damage and medical expenses; past and future loss of earnings; past and future  physical pain and suffering;  past and future loss of enjoyment of life; past and future loss of household services; and past and future loss of association and consortium; in amounts to be determined at trial. Plaintiffs further request the award of punitive damages as well as attorneys' fees, costs and pre- and post-judgment interest as provided for by law.

Respectfully Submitted,

**THE LAW OFFICE OF BRIAN K. BRANCH**

Brian K. Branch
Sean P. McAfee
Attorneys for Plaintiff
902 Roma, NW
Albuquerque, New Mexico 87102
(505) 764-9710

-- AND --

**ERIK B. THUNBERG, ESQ.**

Erik B. Thunberg
3733 Eubank Blvd. N.E.
Albuquerque, NM 87111-3536
(505) 293-0558

22

D-202-CR-201301446 - Monday, May 20, 2013

# State of New Mexico

## v.

# ADAM MICHAEL CASAUS

## CASE DETAIL

| CASE # | CURRENT JUDGE | FILING DATE | COURT |
|---|---|---|---|
| D-202-CR-201301446 | Martinez, Kenneth | 03/26/2013 | ALBUQUERQUE District |

## PARTIES TO THIS CASE

| PARTY TYPE | PARTY DESCRIPTION | PARTY # | PARTY NAME |
|---|---|---|---|
| D | Defendant | 1 | CASAUS ADAM MICHAEL |
| | ATTORNEY: D'AMATO JOHN JAMES | | |
| P | Plaintiff | 1 | STATE OF NEW MEXICO |
| | ATTORNEY: MONTANO REYNALDO M. | | |

## CRIMINAL CHARGE DETAIL

| PARTY | COUNT | SEQ # | STATUTE | CHARGE | CLASS | CHARGE DATE | CIT # | PLEA | DISPOSITION | DISP DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| D 1 | 1 | 1 | 66-08-101(A) | Homicide by vehicle (reckless) | F3 | 02/10/2013 | | | | |
| D 1 | 2 | 1 | 66-08-101(B) | Great bodily injury by vehicle (reckless) | F3 | 02/10/2013 | | | | |

## HEARINGS FOR THIS CASE

| HEARING DATE | HEARING TIME | HEARING TYPE | HEARING JUDGE | COURT | COURT ROOM |
|---|---|---|---|---|---|
| 04/09/2013 | 9:00 AM | PRELIMINARY HEARING | Martinez, Kenneth | ALBUQUERQUE | Courtroom 420 |

## REGISTER OF ACTIONS ACTIVITY

| EVENT DATE | EVENT DESCRIPTION | EVENT RESULT | PARTY TYPE | PARTY # | AMOUNT |
|---|---|---|---|---|---|
| 05/10/2013 | MTN: MOTION | | | | |
| | TO PERMIT TRAVEL OUT OF STATE - SPECIAL SETTING REQUIRED | | | | |
| 04/17/2013 | WAR: BOOKING NOTICE | | | | |
| | REMAND ORDER FOR BOOK & RELEASE - BOOKED BY BSO 04/11/2013 | | | | |
| 04/10/2013 | ORD: ORDER | | D | 1 | |
| | AMENDED REMAND ORDER - REMAND FOR BOOK & RELEASE - TURN IN DATE: BY FRIDAY 04/12/2013 BY 5:00PM | | | | |
| 04/09/2013 | ORD: CONDITIONS OF | | | | |
| | RELEASE | | | | |
| | ON ADAM CASAUS ROR | | | | |
| 04/09/2013 | ORD: ORDER | | D | 1 | |
| | BIND OVER ORDER; OFFENSES CHARGED IN THE CRIMINAL CIMPLAINT, INFORMATION | | | | |
| 04/09/2013 | NTC: OF HEARING | | | | |
| | ARRAIGNMENT PROCEEDINGS ON 4/9/2013 BEFORE JUDGE KENNETH MARTINEZ; RELEASE DEF ROR; BOOK AND RELEASE BY 4/12/13 AT 5:00 P.M. | | | | |
| 04/09/2013 | CRIMINAL INFORMATION | | | | |
| | NON-OPEN | | | | |
| 04/09/2013 | ORD: ORDER | | D | 1 | |
| | REMAND ORDER - TURN IN DATE FRIDAY 04/12/2013 BY 5:00PM [SIC - NO BOND MENTIONED ON REMAND] | | | | |
| 04/09/2013 | NOT GUILTY PLEA | | | | |
| | PLED NOT GUILTY - ROR - BOOK & RELEASE | | | | |
| 04/02/2013 | NTC: OF HEARING | | D | 1 | |
| | PRELIMINARY ON 4-9-13 AT 9AM BEFORE JUDGE K. MARTINEZ | | | | |
| 03/28/2013 | ACCEPTANCE OF SERVICE | | D | 1 | |
| | BY D'AMATO LAW FIRM | | | | |
| 03/27/2013 | ENTRY OF APPEARANCE | | D | 1 | |
| 03/26/2013 | OPN: CRIMINAL | | | | |

**D-202-CR-201301446 - Monday, May 20, 2013**

INFORMATION/
COMPLAINT

STATEMENT OF PROBABLE CAUSE

## JUDGE ASSIGNMENT HISTORY

| ASSIGNMENT DATE | JUDGE NAME | SEQ # | ASSIGNMENT EVENT DESCRIPTION |
|---|---|---|---|
| 03/26/2013 | Martinez, Kenneth | 1 | INITIAL ASSIGNMENT |