IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLES BROWDER, in his individual
capacity and as Personal Representative
of The Estate of ASHLEY BROWDER,
LINDSAY BROWDER and DONNA
BROWDER,

        Plaintiffs,

v.                                No. CIV 13-599 RB/KBM

CITY OF ALBUQUERQUE,
ALBUQUERQUE POLICE
DEPARTMENT, RAYMOND
SCHULTZ, in his capacity as APD
Police Chief, and ADAM CASAUS,
in his individual capacity.

        Defendants.

## MEMORANDUM OPINION AND ORDER

In the very early morning hours of February 10, 2013, a police officer driving his official vehicle ran a red light and crashed into a small SUV. Ashley Browder was killed in the collision. Her sister, Lindsay Browder, was seriously injured.

On May 15, 2013, members of the Browder family filed a Complaint in New Mexico State Court,[1] seeking redress against the Defendants for their injuries. Before the Court is Defendants Raymond Schultz, the Albuquerque Police Department, and the City of Albuquerque's ("the City Defendants") Motion for Judgment on the Pleadings and Defendant Adam Casaus' motion to dismiss. (Docs. 14, 20). The Court considers these motions together.

---

[1] Defendants removed the case to this Court on June 28, 2013.

Jurisdiction arises under 28 U.S.C. §§ 1331. For the state law claims, jurisdiction arises under 28 U.S.C. § 1367. Having considered the submissions and arguments of the parties, the relevant law, and being otherwise fully advised, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motions. (Docs. 14, 20).

### Background[2]

Defendant Adam Casaus was a law enforcement officer for the Albuquerque Police Department. (Doc. 1-1 at ¶ 7). Plaintiffs Ashley Browder and Lindsay Browder are sisters. They were travelling together when their vehicle was struck by Sergeant Casaus' vehicle. Plaintiff Charles Browder is the father of the sisters and the personal representative of the Estate of Ashley Browder. Plaintiff Donna Browder is their mother.

On Friday, February 9th, 2013, Sergeant Casaus' duty shift was scheduled to end at 11:00 p.m. (Doc. 1-1 at ¶ 17). However, for some reason, Sergeant Casaus did not leave work until hours later. At approximately 1:24 a.m. on Saturday, February 10, 2013, a camera captured video of Sergeant Casaus leaving the Bernalillo County Sheriff Department ("BCSD") Communications Center. (Doc. 1-1 at ¶ 19). Still in uniform, Sergeant Casaus got into his marked Albuquerque Police Department ("APD") Chevrolet Tahoe, drove south on Holly Avenue Northeast, and then west on Paseo Del Norte Boulevard.[3] (Doc. 1-1 at ¶ 13). Only eight minutes later, Sergeant Casaus used his police radio to report his involvement in a collision with injuries at the intersection of Eagle Ranch Road Northwest and Paseo Del Norte Boulevard Northwest. (Doc. 1-1 at ¶ 20).

---

[2] The following background narrative is based on Plaintiffs' allegations, which, at this stage of the litigation process, have not been substantiated. However, for purposes of analyzing Defendants' motions to dismiss, pursuant to Rule 12(b)(6), this Court must accept all of the Plaintiffs' well-pleaded allegations as true. *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996).

[3] All addresses are in Albuquerque, New Mexico.

A minute prior to the call, at approximately 1:31 a.m., Sergeant Casaus crashed into the passenger side of a Honda CR-V. (Doc. 1-1 at ¶ 30). Lindsay Browder, the driver of the car, suffered serious injuries. (Doc. 1-1 at ¶ 35). Her sister Ashley, the passenger, died at the scene as a result of her injuries. (Doc. 1-1 at ¶ 34). The sisters were travelling northbound on Eagle Ranch into the intersection with Paseo Del Norte on a solid green light, when Sergeant Casaus' police vehicle entered the intersection on a solid red light, with his emergency lights on, at a high rate of speed. (Doc. 1-1 at ¶¶ 29, 31, 52).

The distance Sergeant Casaus travelled between the BCSD Communications Center and the intersection where the collision occurred was 8.8 miles. (Doc. 1-1 at ¶ 13). Along this route, Sergeant Casaus would have encountered 10 traffic signals, not including the one at Eagle Ranch and Paseo Del Norte. (Doc. 1-1 at ¶ 26). Sergeant Casaus travelled this distance in eight minutes or less.

Sergeant Casaus claimed that, at the time he entered the intersection, he had been following another vehicle he believed was operating in a dangerous manner. (Doc. 1-1 at ¶ 36). However, contrary to APD policy, Sergeant Casaus did not call or radio in about the vehicle he allegedly was following prior to the collision. (Doc. 1-1 at ¶¶ 37-38). Further, two eye-witnesses to the collision, and the events immediately preceding the collision, refuted Sergeant Casaus' version of events. (Doc. 1-1 at ¶ 43-59). At least one of the witnesses observed that prior to Sergeant Causas entering the intersection he did not use the brakes, was travelling at a high rate of speed, and did not turn on his siren. (Doc. 1-1 at ¶¶ 56-59).

Based on these facts, Plaintiffs seek redress not only against Sergeant Casaus, but also against the City of Albuquerque and the Albuquerque Police Department (APD). Further, Plaintiffs bring this action against Raymond Schultz, in his capacity as APD Police Chief.

Plaintiffs bring four claims against the various Defendants. Count I alleges Defendant Adam Casaus violated the civil rights of Ashley and Lindsay Browder. Count II alleges that Defendants City of Albuquerque, APD, and APD Chief Raymond Schultz violated the civil rights of Ashley and Lindsay Browder. Count III alleges negligent hiring, training, supervision and retention.[4] And, Count IV alleges negligence and reckless conduct of Adam Casaus against the City of Albuquerque and the APD.

## Legal Standard

### I.    Rule 12(b)(6)

When reviewing a motion for judgment on the pleadings under Rule 12(c), the Court applies the same standard that applies to a Rule 12(b)(6) motion to dismiss. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint in whole or in part for failing to state a claim upon which relief is available. To survive a Rule 12(b)(6) motion to dismiss, a complaint must state a claim for relief that plausibly, not merely possibly, entitles the plaintiff to relief under the relevant law. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). In considering a motion to dismiss, the court must look within the four corners of the complaint and accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the court need not accept legal conclusions contained in the complaint as true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

---

[4] Negligent supervision is both a basis for a § 1983 claim and a distinct cause of action under New Mexico state law. *See Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010); *Ortiz v. New Mexico State Police*, 112 N.M. 249, 251, 814 P.2d 117, 119 (Ct. App. 1991) *cert quashed*, 113 N.M. 352, 826 P.2d 573 (1992). Defendants only challenge the viability of the § 1983 claim.

**Discussion**

Defendants seek the dismissal of the APD and Raymond Schultz as parties, the dismissal of the individual claims asserted by Charles Browder and Donna Browder, and the dismissal of Counts I, II, and III of Plaintiffs' Complaint.

### I.     Defendant Albuquerque Police Department

Plaintiffs do not oppose the Defendants' request to dismiss the APD as a Defendant in this suit. Therefore, Defendant APD is dismissed with prejudice.

### II.    Defendant Raymond Schultz

The Complaint names Raymond Schultz in his capacity as APD Police Chief as a Defendant in the current action. Defendants argue that naming Chief Schultz in his official capacity is redundant for the purposes of pleading a case under § 1983 and the New Mexico Tort Claims Act.[5] The Court agrees. The official capacity claims against Chief Schultz are duplicative of the claims against the City of Albuquerque and should be dismissed.

An action filed against a state official in his or her official capacity is simply another way of pleading an action against an entity of which an officer is an agent. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Griess v. Colorado*, 841 F.2d 1042, 1045 (10th Cir. 1988) ("An official capacity suit is treated as a suit against the state."); *Ford v. New Mexico Dep't of Pub. Safety*, 891 P.2d 546, 552 (Ct. App. 1994) (stating that the nature of liability of an official in a suit under the New Mexico Tort Claims Act is essentially the same as the nature of the liability of the official sued under section 1983). Damages awarded against a defendant in his official capacity are only recoverable against the governmental entity itself. *Kentucky*, 473 U.S.

---

[5] The Court construes Plaintiffs' Complaint as only bringing claims against Chief Schultz in his official capacity. Therefore, the Court does not consider Defendants' arguments that Chief Schultz cannot be individually liable for the collision under a theory of supervisory liability. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (noting that in certain situations a supervisor may be personally liable for the acts of his employee).

at 166. Hence, "a § 1983 action appropriately is pleaded against a municipality *either* by naming the municipality itself *or* by naming a municipal official in his or her official capacity." *Vondrak v. City of Las Cruces*, CIV 05-0172 JB/LFG, 2009 WL 1300945, *2 (D. N.M. Mar. 30, 2009) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)) (emphasis added).

Nevertheless, it is common for Plaintiffs to name both the municipality and officer in an official capacity as Defendants. In these cases, courts routinely dismiss official capacity claims as redundant of the claims against the municipal entity itself. *See e.g.*, *Vondrak*, 2009 WL 1300945, *2 (dismissing official capacity claims against individual state actors as redundant of claims against municipality); *Doe v. Douglas Cnty. Sch. Dist. RE–1,* 775 F. Supp. 1414, 1416 (D. Colo. 1991) (same); *Stout v. U.S. ex rel. U.S. Marshal's Serv.*, CIV 13-753 WJ/GBW, 2013 WL 5954780 (W.D. Okla. Nov. 4, 2013) (same).

Accordingly, Plaintiffs' claims brought against Chief Schultz in his official capacity are redundant, confusing, and unnecessary, because the same claims are brought against the City. Moreover, because Plaintiffs bring the same claim against the city, dismissing Chief Schultz in his official capacity "makes no practical difference." *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987). Thus, to avoid confusion, Plaintiffs' claims against Defendant Schultz in his official capacity will be dismissed with prejudice.

### III.   Plaintiffs Charles Browder and Donna Browder

Defendants argue that Plaintiffs Charles and Donna Browder, the parents of Ashley and Lindsay Browder, have not set forth any viable claims on their own behalf.[6] In response, Plaintiffs concede that Charles and Donna Browder do not have any viable federal claims, but insist their state law loss of consortium claims remain viable. (Doc. 26 at 2).

---

[6]There is no dispute as to whether Charles Browder, as the Personal Representative of the Estate of Ashley Browder, is a proper Plaintiff to the current action.

Under New Mexico law, loss of consortium claims are broadly available to those who have a close and intimate relationship with the decedent. *See Lozoya v. Sanchez*, 133 N.M. 579, 584, 66 P.3d 948, 953 (2003) *abrogated on other grounds by Heath v. La Mariana Apartments*, 143 N.M. 657, 180 P.3d 664 (2008). As New Mexico does not have a legal definition for who can bring a loss of consortium claim, courts are to look at whether a plaintiff had a sufficient relational interest with the victim of a tort to recover for loss of consortium. *Id.* at 587, 956. In making this decision, courts "are to consider several factors including, but not limited to: duration of the relationship; mutual dependence; common contributions to a life together; shared experience; living in the same household; financial support and dependence; emotional reliance on each other; qualities of their day to day relationship; and the manner in which they related to each other in attending to life's mundane requirements." *See Fitzjerrell v. City of Gallup ex rel. Gallup Police Dep't*, 134 N.M. 492, 494, 79 P.3d 836, 838 (Ct. App. 2003).

While the Court recognizes that the Complaint provides only limited information about the quality of the relationships between the various Plaintiffs, it determines that Charles and Donna Browder pled sufficient facts to support their loss of consortium claims. According to the Complaint, Charles and Donna Browder are the parents of Ashley Browder. (Doc. 1-1 at ¶ 125). Further, the Complaint alleges the parents suffered emotional and psychological anguish and loss of companionship as a result of their daughter's death. From these allegations, the Court can plausibly infer that Charles and Donna Browder had a significant enough relational interest with the decedent to present viable loss of consortium claims. *See Fitzjerrell*, 134 N.M. at 497, 79 P.3d at 841 (holding that allegations that the parents and siblings have all suffered emotional distress resulting from the loss of the society, guidance, and companionship of the decedent were enough to infer the essential elements of a loss of consortium claim).

Accordingly, the federal claims of Charles and Donna Browder are dismissed. However, their state claims for loss of consortium remain viable.

## IV. Municipal Liability

A plaintiff suing a municipality under 42 U.S.C. § 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *See Myers v. Oklahoma Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).

Defendants concede that the pleadings adequately allege the second element of municipal liability – that the municipality was the moving force behind the injury alleged. (Doc. 27 at 4-5). However, Defendants argue that the pleadings are inadequate to show that a municipal employee committed a constitutional violation. The Court disagrees.

### a. Substantive Due Process

Ashley and Lindsay Browder claim that they were denied their right to life, in violation of the substantive due process guarantees of the Fourteenth Amendment. (Doc. 1-1 at ¶ 91).

The Fourteenth Amendment provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. "[T]he touchstone of due process is protection of the individual against arbitrary action of government . . . whether the fault lies in a denial of fundamental procedural fairness . . . or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Cnty of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal quotations and citations omitted). "Substantive due process claims are not based on state law but are founded upon deeply rooted notions of fundamental personal interests derived from the Constitution." *Graves v. Thomas*, 450

F.3d 1215 (10th Cir. 2006) (citing *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998)) (quotation and citation omitted.)

"The 'ultimate' standard for determining whether there has been a substantive due process violation is whether the challenged government actions shocks the conscience of federal judges." *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) (internal quotations omitted). Under this standard, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Lewis*, 523 U.S. at 849. However, it is a closer call whether "the point of the conscience shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or gross negligence." *Id.*

This case falls within this nebulous middle range. Plaintiffs do not suggest that Sergeant Casaus intentionally crashed his police vehicle into the Browder automobile. Rather, Plaintiffs contend that Sergeant Casaus, acting knowingly and deliberately and in the absence of any legitimate law enforcement objective, drove his car in a reckless manner over a significant distance. According to Plaintiffs, this is enough to meet the shock-the-conscience standard.

The Supreme Court's decision in *County of Sacramento v. Lewis* "is the starting point when considering a substantive due process claim resulting from a highspeed chase." *Graves*, 450 F.3d at 1221. In *Lewis*, two teenagers on a motorcycle refused to obey a police officer's command to stop, and a high speed pursuit ensued. When the motorcycle made a sharp turn, one of the teenagers fell off and was killed by the officer, who was unable to stop his car and struck the teen. The chase covered 1.3 miles in a span of 75 seconds. *See Lewis*, 523 U.S. at 836-837.

The parents of the decedent then brought a complaint alleging the deprivation of the decedent's Fourteenth Amendment substantive due process right to life. In considering the

viability of such a claim, the Court acknowledged that, in some instances, deliberately indifferent conduct is actionable under the Fourteenth Amendment. *Id.* at 849. However, the Court cautioned that circumstances are important in evaluating the existence of a substantive due process claim: "Deliberate indifference that shocks in one environment may not be so patently egregious in another, and [the Court's] concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Id*. at 850.

Applying this standard, the *Lewis* Court held that the officer's action did not shock the conscience. In coming to this decision, the Court emphasized the instantaneous nature of the event, noting that the deliberate indifference standard should only be used when actual deliberation is possible. *Id.* at 851. Further, the Court stressed the fact that the officer was not the one who caused the lawless action, and was only instinctively reacting to a situation. *Id.* at 855.

In contrast, Sergeant Casaus' recklessness was self-initiated, and carried out over an extended period of time. Unlike the officer in *Lewis*, there are significant allegations to support the inference that Sergeant Casaus was not engaged in any type of police-related pursuit, let alone one that required him to speed through red lights. Rather, according to the Complaint, Sergeant Casaus was intentionally misusing his police vehicle when the collision occurred. This distinguishes this case from *Lewis*. *See id.* at 854 fn. 13 (citing *Checki v. Webb*, 785 F.2d 534, 538 (5th Cir. 1986) ("Where a citizen suffers physical injury due to a police officer's *negligent use* of his vehicle, no section 1983 claim is stated. It is a different story when a citizen suffers or is seriously threatened with physical injury due to a police officer's *intentional misuse* of his vehicle."))

10

Here, Sergeant Casaus sped the 8.8 miles to the site of the collision in less than 8 minutes. Driving on city streets, Sergeant Casaus encountered eleven different traffic signals along his route. (Doc. 1-1 at ¶¶ 24-27). Over the approximately eight minute span between the BCSD Communications Center and the site of the collision, and at each of the eleven intersections he encountered, Sergeant Casaus had significant opportunity for reflection, without having to worry about competing pressures. The choices he made – speeding, accelerating into the intersection, not pressing the brakes, engaging his lights but not the siren – were not reactions to external events, but were the product of deliberate thought. (Doc. 1-1 at ¶¶ 61-62, 66-68). These allegations are enough to show that Sergeant Casaus acted with "conscience, deliberate indifference to the extreme risk of very serious harm to the Plaintiffs." *Green v. Post*, 574 F.3d 1294, 1303 (10th Cir. 2009).

In support of their argument that Sergeant Casaus' actions do not shock the conscience as a matter of law, Defendants point to *Green v. Post*. *Id.* In *Green*, the police officer was not involved in a high-speed chase and was not responding to an emergency. Rather, the police officer was attempting to catch up to a vehicle suspected of driving away from a gas station without paying for approximately $30.00 worth of gas. *Id.* at 1296. While travelling through an intersection on a yellow light at a high rate of speed, without his vehicle siren or lights on, the officer struck another vehicle attempting to turn left. *Id.* The driver of that vehicle was killed. *Id.* at 1297. The Tenth Circuit ruled that the facts in *Green* did not meet the deliberate indifference standard. *Id.* at 1303.

This case is distinguishable. While the officer in *Green* was not responding to an emergency, he was answering an official call which required a rapid response. *Id.* Here, there is significant doubt that Sergeant Casaus' actions were cause by external pressure – such as an

official call or a pursuit. Indeed, it is plausible to infer that Sergeant Casaus had no legitimate police-work related reason to justify his reckless driving. Furthermore, in *Green,* the officer sped through a yellow light when the decedent's car turned into his path. In this case, Sergeant Casaus sped through a red light, also without his siren on, and encountered exactly what one would expect when running a red light – another vehicle. *See id.* at 1304. Simply stated, Sergeant Casaus displayed a different level of recklessness and forethought than the officer in *Green*.[7]

In sum, the Court determines that Plaintiffs have adequately pled a violation of their substantive due process rights as guaranteed by the Fourteenth Amendment of the Constitution. The Court makes this determination bearing in mind the three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: "(1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety." *Graves*, 450 F.3d at 1220-21 (quoting *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995)). After careful consideration, the Court determines that adherence to these principles does not require dismissing Plaintiffs' constitutional claims. Therefore, Defendants' motions to dismiss Plaintiffs § 1983 claims are denied.

## V.     Sergeant Casaus is not entitled to Qualified Immunity

State and local officials who carry out executive or administrative functions are entitled to assert the defense of qualified immunity. *See Brosseau v. Haugen*, 543 U.S. 194, 194-97 (2004). Qualified immunity protects government officials performing discretionary functions

---

[7] In Defendants' reply brief, they argue that if Plaintiffs' claim that Sergeant Casaus had no legitimate law enforcement purpose when he crossed through the intersection, then Sergeant Casaus cannot be found to be acting within the scope of his employment. Defendants misread Plaintiffs' argument. The contention is only that Sergeant Casaus did not have a legitimate law enforcement objective to justify driving in the manner he did. This is different than arguing he did not have any legitimate law enforcement purpose in driving his police vehicle, or was acting outside of the course and scope of his employment.

from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The defense of qualified immunity shields public officials from facing the burdens of litigation and is an immunity from suit, not simply a defense to a plaintiff's claims. *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1150 (10th Cir. 2006).

The Tenth Circuit applies a two-step analysis to determine if a defendant is entitled to qualified immunity. First, a plaintiff must allege that the defendant's actions violated a specific constitutional right. Second, if the plaintiff has alleged a constitutional violation, the plaintiff must show that the constitutional right was clearly established when the conduct occurred. *Toevs. v. Reid*, 685 F.3d 903, 909 (10th Cir. 2012). A court has the discretion to consider the steps in whatever order is appropriate under the circumstances. *Id.* at 910 (citing *Pearson v. Callahan,* 555 U.S. 223 (2009)). Plaintiffs bear the burden to prove that their constitutional rights were violated and that the law giving rise to their claims was clearly established at the time the acts occurred. *Medina v. Cram,* 252 F.3d 1124, 1128 (10th Cir. 2001).

As determined above, Plaintiffs adequately alleged that Sergeant Casaus violated their substantive due process rights. Thus, the first step of the qualified immunity analysis is satisfied.

Turning to the second step of the qualified immunity analysis, this element is also satisfied. Under *Green*, decided on August 7th, 2009, Sergeant Casaus should reasonably have known that he could be liable for exhibiting "conscience, deliberate indifference to the extreme risk of very serious harm to the plaintiff." *Green v. Post* at 1303. Further, it should have been clear to Sergeant Casaus that this standard applies to his operation of a police vehicle. *See id.* As discussed above, Sergeant Casaus displayed such indifference when, in a non-emergency

situation, he sped over a long stretch of city streets, ran at least one red light, and crashed into the Browder vehicle.

Consequently, Defendant Casaus is not entitled to qualified immunity.

## VI.     Conclusion

In accordance with the opinion above, Defendants APD and Raymond Schultz, in his official capacity, shall be dismissed from the current proceeding with prejudice. Further, the federal claims of Charles and Donna Browder shall be dismissed. Moreover, Defendants' motions to dismiss Counts I, II, and III of Plaintiffs' Complaint are denied.

**THEREFORE,**

IT IS ORDERED that the City Defendants' Motion for Judgment on the Pleadings and Defendant Adam Casaus' Motion to Dismiss (Docs. 14, 20) are GRANTED IN PART AND DENIED IN PART in accordance with the opinion above.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**