## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CHARLES BROWDER, in his individual
capacity and as Personal Representative
of The Estate of ASHLEY BROWDER,
LINDSAY BROWDER and DONNA
BROWDER,

      Plaintiffs,

v.                                                                                    No. CIV 13-0599 RB/KBM

CITY OF ALBUQUERQUE, and ADAM
CASAUS in his individual capacity,

      Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendant Casaus'[s] Motion for Partial Summary Judgment Requesting Dismissal of Counts I and IV (Section 41-4-12 Claim), and Memorandum in Support, filed on March 11, 2016 (Doc. 172), and on Defendant Adam Casaus's reply, which the Court construes as a motion to dismiss on the basis of lack of subject matter jurisdiction, filed on April 14, 2016 (Doc. 214). Jurisdiction arises under 28 U.S.C. § 1331. Having considered the submissions of counsel and relevant law, the Court will **DENY** both motions.

## I.      Procedural Background[1]

This case arises from a tragic traffic accident that occurred in the early-morning hours of February 10, 2013, when Defendant Casaus, driving a police vehicle, collided with the car driven by Plaintiff Lindsay Browder. Lindsay's sister, Ashley Browder, was a passenger in Lindsay's vehicle. Lindsay was seriously injured and Ashley was fatally injured as a result of the collision.

---

[1] The litigation surrounding this accident has already been long and involved; therefore, the Court recites only that portion of the procedural history relevant to this motion.

At issue in this motion for summary judgment is whether Defendant Casaus is entitled to qualified immunity as to Count I, whether Plaintiffs adequately pled a claim against Casaus under N.M. Stat. Ann. § 41-4-12 in Count IV, and whether the Court has subject matter jurisdiction.

Plaintiffs filed their complaint in state court alleging violations of Ashley and Lindsay Browder's civil rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 by Defendant Casaus (Count I), a claim for Negligent Supervision and Retention against the City of Albuquerque (Count III), and claims under the New Mexico Tort Claims Act against both Defendants (Count IV).[2] (Doc. 1, Ex. A (Compl.) ¶¶ 77–135.) Defendants removed the case to this Court on June 28, 2013. (Doc. 1.) Defendants received an adverse ruling on a motion to dismiss, appealed it, and the Tenth Circuit affirmed the decision of this Court. (*See* Docs. 30, 33, 42.) The parties have now had time to conduct discovery, and Defendant Casaus brings this motion for summary judgment, which is ripe and ready for decision.

## II.     Statement of Facts[3]

### A.     Undisputed Facts

Defendant Casaus, a Sergeant with the Albuquerque Police Department (APD), worked the 3:00–11:00 p.m. shift on February 9, 2013. (Doc. 163, Ex. A at 67:19–21; Doc. 192 at 2.) After completing some administrative paperwork, Defendant Casaus left to visit his wife, who was working at the Bernalillo County Sheriff's Communication Center (BCSO dispatch) at the intersection of Eubank and Paseo Del Norte. (Doc. 163, Ex. A at 68:2–69:3; Doc. 192 at 2.)

---

[2] Claims against the Albuquerque Police Department and Chief Raymond Schultz in his official capacity have since been dismissed (Doc. 30 at 5–6), and the parties jointly dismissed Count II and the negligent hiring and training claim under Count III (Docs. 213, 216).

[3] In accordance with summary judgment standards, the Court recites all admissible facts in a light most favorable to the Plaintiffs. Fed. R. Civ. P. 56; *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). All events took place in Albuquerque, New Mexico.

Defendant Casaus was still in his APD uniform and his marked APD SUV, and he did not log off of the APD radio. (Doc. 163, Ex. A at 70:5–8, 72:1–11, 82:23–25; Doc. 192 at 2.) His SUV was marked with the words "Albuquerque Police Department" in highly reflective red and blue tape. (Doc. 163, Ex. A at 72:1–14; Doc. 192 at 2.) When the emergency equipment is activated on the vehicle, the taillights and the reverse lights wig-wag, they alternate flashes to the brake lights, and the reverse lights alternate flashes on both of the taillights. (Doc. 163, Ex. A at 66:1–6; Doc. 192 at 2.) There are also two red LED lights attached to the sides of the push bumper that point sideways. (Doc. 163, Ex. A at 66:7–11; Doc. 192 at 2.)

Defendant Casaus left BCSO dispatch at approximately 1:24 a.m. on February 10, 2013, made two quick turns on Holly Avenue and Eubank Boulevard NE, then headed westbound on Paseo Del Norte. (Doc. 146, Ex. 1 at 61:2–17; Doc. 163, Ex. A at 72:18–21; Doc. 192 at 2.) Mr. Michael Marthe, an eyewitness who was also traveling westbound on Paseo Del Norte, saw Defendant Casaus activate the emergency lights on his police vehicle just before the Coors off ramp. (Doc. 163, Ex. H at 1; Doc. 192 at 2.) It is unclear what the speed limit was at this point in the roadway, but Defendant Casaus believes he was going between 70 and 75 miles per hour (mph), and he concedes that he was speeding. (Doc. 146, Ex. 1 at 81:6–16, Ex. 2 at 11, Ex. 6 at 85:12–22; Doc. 163, Ex. A at 80:5–9; Doc. 192 at 3; Doc. 214 at 2.)

Defendant Casaus testified that as he approached the intersection of Paseo Del Norte and Eagle Ranch, he came around the curve, glanced up the hill, and could see a vehicle stopped at a red light in the right-hand lane of Paseo Del Norte. (Doc. 163, Ex. A at 85:6–11; Doc. 192 at 3.) The vehicle he saw belonged to another eyewitness, Ms. Jana Villanueva, who was stopped at the red light and looking at Instagram photos with her son. (Doc. 146, Ex. 3 at 46:15–23, 47:8–10;

Doc. 172 at 3; Doc. 192 at 3.) Ms. Villanueva testified that she saw the police vehicle's emergency lights in her rearview mirror. (Doc. 146, Ex. 3 at 47:18–24; Doc. 172 at 3; Doc. 192 at 3.)

Plaintiff Lindsay Browder was approaching the same intersection, driving northbound on Eagle Ranch. (Doc. 172, Ex. J at 130:6–9; Doc. 192 at 3.) She testified that she could see the traffic light for the intersection when she was just south of Paseo Del Norte. (Doc. 172, Ex. J at 135:15–20; Doc. 192 at 3.) She remembers the light was green for northbound Eagle Ranch traffic just as she reached the crosswalk of the intersection. (Doc. 146, Ex. 3 at 63:13–17; Doc. 192 at 2.) She did not look to her right to see if there was traffic coming from westbound Paseo Del Norte, and she does not recall seeing any other traffic, including the police vehicle or Ms. Villanueva's car stopped in the westbound lane of Paseo Del Norte. (Doc. 146, Ex. 3 at 63:23–64:6; Doc. 192 at 2.) Plaintiff Browder does not remember anything between the time she saw the green light as she reached the crosswalk and the time she woke up in the hospital. (Doc. 172, Ex. J at 149:1–24; Doc. 192 at 3.)

The Crash Data Recorder (CDR) recovered from the police vehicle reveals information about Defendant Casaus's speed and actions from .5 seconds through 2.5 seconds prior to the collision. (Doc. 146, Ex. 2 at 17.) At 2.5 seconds before impact, Defendant Casaus had a speed of 65 mph and applied his brakes—there is no information about how long, if at all, he applied his brakes prior to that time. (*Id.*) At 2.0 seconds before impact, he began depressing the accelerator: the CDR data shows that he steadily increased pressure on the accelerator pedal from 2.0 seconds through .5 seconds prior to impact.[4] (*Id.*) Defendant Casaus testified that he looked to the left and right before he entered the intersection, and he did not see any vehicles on Eagle Ranch.[5] (Doc.

---

[4] There is no information about the last half-second immediately prior to the collision. (Doc. 146, Ex. 2 at 17.)

[5] Defendant Casaus submitted a video with his motion. (Doc. 172, Ex. P.) He asserts that the footage, taken by defense expert Mr. Alan Davis, depicts the path of travel that Casaus traveled on February 10, 2013, beginning at the

163, Ex. A at 86:2–4, 87:3–7; Doc. 192 at 3.) Ms. Villanueva testified that she did not see Plaintiff Browder's vehicle until the impact; she opined that Defendant Casaus probably did not see the vehicle until it was too late. (Doc. 163, Ex. E at 48:20–21; Doc. 172, Ex. E at 49:14–15; Doc. 192 at 3.) Mr. Marthe, still traveling westbound somewhere behind Defendant Casaus, also testified that he did not see any northbound traffic on Eagle Ranch. (Doc. 163, Ex. E at 29:22–24; Doc. 192 at 3.)

Defendant Casaus remembers that the light was red for him when he approached the intersection (Doc. 146, Ex. 1 at 118:9–10), but he has been equivocal about what color he recalls the light was when he actually entered the intersection. At his September 14, 2015 deposition, he said he does not remember what color the light was when he went through the intersection (Doc. 146, Ex. 1 at 150:20–151:3); at his criminal trial, he testified that the light was green when he "was getting ready to enter" the intersection (Doc. 163, Ex. A at 86:21–25). After he proceeded into the intersection, Defendant Casaus saw a light flash, and then he realized he had been in a collision. (Doc. 163, Ex. A at 87:11–20; Doc. 192 at 3.)

B.     **Disputed Facts**

Defendant Casaus's motion fails to identify one of the material disputes between the parties: the question of whether he was following a vehicle when he sped through the intersection. Defendant Casaus contends that as he was driving around the area of Paseo Del Norte and Second Street, he saw a group of approximately three vehicles, one of which appeared to be speeding and

---

approximate location where Mr. Marthe saw Casaus activate his emergency equipment, and ending at the intersection of Paseo Del Norte and Eagle Ranch. (Doc. 172 ¶ 36 and Ex. P.) According to Defendant Casaus, the video demonstrates that because Paseo Del Norte curves and goes uphill prior to the intersection at Eagle Ranch, "[n]orthbound Eagle Ranch does not become visible until a vehicle traveling westbound [on] Paseo Del Norte is just a few feet from the intersection." (Doc. 172 at 15–16.) Plaintiffs object to the video on the basis that there is no evidence the video depicts the same point of view as that seen by either Mr. Marthe or Defendant Casaus. (Doc. 192 ¶ 4.) For the sake of argument, however, Plaintiffs accept as true that Defendant Casaus could not see traffic approaching on Eagle Ranch until he was only a few feet from the intersection. (*See* Doc. 192 at 8, n.3.)

failing to maintain a lane. (Doc. 163, Ex. A at 72:22–74:16; Doc. 181 at 7.) Defendant Casaus testified that he decided to perform a law enforcement action: he sped up and activated his emergency equipment somewhere around the Rio Grande River. (Doc. 163, Ex. A at 78:9–81:5; Doc. 181 at 7.) He asserts that at the time he activated his emergency equipment, the vehicle he was following was 150–200 yards away from him, and they were both driving at approximately 70 miles per hour. (Doc. 163, Ex. A at 80:3–81:14; Doc. 181 at 7.) And although Defendant Casaus maintains that he kept his emergency lights on and intermittently turned on his police vehicle's siren, he never had any indication that the driver of the vehicle knew he was signaling for the driver to pull over. (Doc. 163, Ex. A at 83:12–84:24, Ex. N at 99:12–18; Doc. 181 at 7.) Defendant Casaus testified that he never communicated information about the events to dispatch, because he had insufficient information about the vehicle to report. (Doc. 163, Ex. A at 75:12–76:7, Ex. N at 51:11–18.)

Plaintiffs believe Defendant Casaus has fabricated the story about following the vehicle, and they maintain he had no valid law enforcement justification for driving in the manner he did. (*See* Doc. 193 ¶ 13.) As set out in the Statement of Facts in the Court's Memorandum Opinion and Order dated April 8, 2016, Plaintiffs point out that Defendant Casaus's story is self-serving and inconsistent, and they provide testimony from three eyewitnesses that conflicts with his version of the events. (*See* Doc. 205 at 4–7.)

## III.   Summary Judgment Standard

### A.   Summary Judgment Standard of Review

Summary judgment is appropriate when the Court, viewing the record in the light most favorable to the nonmoving party, determines "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Garrison*

*v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). A fact is "material" if it could influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a reasonable trier of fact could return a verdict for either party. *Id*. In cases where the moving party will not bear the burden of persuasion at trial, the movant bears the initial responsibility of identifying "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). The party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324). The nonmoving party may not rely merely on allegations or denials in its own pleadings. Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S. at 324. Additionally, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citations omitted). Although the material submitted by the parties in support of and in opposition to the motion must be "construed liberally and in favor of the party opposing the motion[,]" *Florom v. Elliott Mfg.*, 867 F.2d 570, 574 (10th Cir. 1989) (citation omitted), "the burden on the moving party may be discharged by" demonstrating to the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

**B.     Law Regarding Qualified Immunity**

The qualified immunity defense "protects law enforcement officials who are required to exercise their discretion by shielding them from liability for harm caused by reasonable mistakes." *G.M. ex rel B.M. v. Casalduc*, 982 F. Supp. 2d 1235, 1241 (D.N.M. 2013) (citing *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity grants such officials "an entitlement not to stand trial or face the other burdens of litigation . . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"When a defendant moves for summary judgment on the basis of qualified immunity, the burden shifts to the plaintiff to demonstrate, on the facts alleged, that (1) the defendant violated her constitutional or statutory rights and (2) the right was clearly established at the time of the alleged unlawful activity." *Castillo v. Day*, 790 F.3d 1013, 1019 (10th Cir. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "A right is clearly established if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Casalduc*, 982 F. Supp. 2d at 1241 (quoting *Courtney v. Okla. ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013) (internal citation omitted)). In other words, in the light of pre-existing law, the unlawfulness of the official's actions must be apparent. *Id.* "If the plaintiff cannot meet either part of this burden, the defendant is entitled to qualified immunity." *Castillo*, 790 F.3d at 1019 (citation omitted). The Court may address either prong of the two-step analysis first. *Casalduc*, 982 F. Supp. 2d at 1242 (citing *Courtney*, 722 F.3d at 1222 (internal citation omitted)).

IV.     **Discussion**

A.      **Substantive Due Process Claim**

Plaintiffs allege that Defendant Casaus's conduct in speeding and running a red light, thereby crashing into their vehicle and causing serious injury and death, all with no legitimate law enforcement objective, violated Lindsay and Ashley's substantive due process rights. "Substantive due process protects individuals against 'arbitrary action of government' that deprives a citizen of life, liberty or property 'whether the fault lies in a denial of fundamental procedural fairness . . . or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective.'" *Perez v. Unified Gov't of Wyandotte Cty./Kan. City, Kan.*, 432 F.3d 1163, 1166 (10th Cir. 2005) quoting (*Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998) (internal citations omitted)). "Only government conduct that 'shocks the conscience' can give rise to a substantive due process claim." *Id.* (citing *Lewis*, 523 U.S. at 848). The Court denied Defendant Casaus qualified immunity for the Plaintiffs' Fourteenth Amendment claim on his earlier motion to dismiss, and the Tenth Circuit affirmed that decision. (*See* Docs. 30, 42.) Defendant Casaus now seeks qualified immunity after the development of the record. The Court finds qualified immunity is still improper.

"[A] § 1983 violation based on substantive due process 'must be predicated on a state action manifesting one of two traditional forms of wrongful intent—that is, either: (1) an intent to harm; or (2) an intent to place a person unreasonably at risk of harm.'" *Ward v. Anderson*, 494 F.3d 929, 938 (10th Cir. 2007) (quoting *Uhlrig v. Harder*, 64 F.3d 567, 573–74 (10th Cir. 1995) (internal citation omitted)). "While 'an intent to harm' follows the traditional tort law concept of intentionality, we have defined 'an intent to place a person unreasonably at risk' (or reckless conduct) as when a state actor 'was aware of a known or obvious risk that was so great that it was

9

highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard of the consequences.'" *Uhlrig*, 64 F.3d at 574 (quoting *Medina v. City & Cty. of Denver*,[6] 960 F.2d 1493, 1496 (10th Cir. 1992) (internal citations omitted)). Plaintiffs bring their claim under this second standard, asserting that Defendant Casaus was deliberately indifferent to the extreme risk of harm he posed to other motorists he might encounter on the road. (*See* Doc. 192 at 8.) *See also Green v. Post*, 574 F.3d 1294, 1303 (10th Cir. 2009).

Defendant Casaus raises two primary issues in support of his position that he did not violate Plaintiffs' constitutional rights. First, he argues Plaintiffs must establish that he was deliberately indifferent to Lindsay and Ashley specifically, not to the motoring public in general. (Doc. 172 at 13–16.) Second, he contends Plaintiffs cannot show that he had sufficient time to deliberate. (*Id.* at 17–18.) The Court will address each in turn.

### 1. Plaintiffs have demonstrated that Defendant Casaus was deliberately indifferent to the substantial risk of harm he posed to the motoring public.

Defendant Casaus first argues that "there is no evidence in the record that Mr. Casaus, while traveling at an excessive speed, was thinking about the intersection of Eagle Ranch and Paseo or was aware of; thinking about; and reflecting about Ashley or Lindsay Browder." (Doc. 172 at 13–14.) Defendant Casaus maintains that, due to the curve in the road and the incline before he reached the traffic light, he could not have seen the Browder vehicle in the intersection until he

---

[6] *Medina* was expanded upon by *Williams v. City and County of Denver*, where the Tenth Circuit took care to clarify that in order to find a substantive due process violation predicated on conduct that is reckless, a court must also find that the conduct was shocking to its conscience. 99 F.3d 1009, 1014–15 (10th Cir. 1996) (finding that plaintiff must show both "reckless conduct" *and* that the conduct shocks the court's conscience), *vacated in light of Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998); *see also Uhlrig v. Harder*, 64 F.3d 567 (10th Cir. 1995). This area of law has been further developed with the Supreme Court's decision in *Lewis* and its progeny. *Lewis*, 523 U.S. at 849 (noting that whether conduct is conscience shocking "when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or gross negligence[,]" is a "closer call" (internal citation omitted)).

was "just a few feet from the intersection." (*Id.* at 15–16.) He contends that Plaintiffs must prove he had time to think specifically about Lindsay and Ashley in their vehicle in order to establish a constitutional violation. (*Id.* at 13–16.) The Court disagrees.

Defendant Casaus cites to *Green v. Post* in support of his position. (Doc. 214 at 9–10 (citing *Green*, 574 F.3d at 1303).) In *Green*, the Tenth Circuit noted that in a deliberate indifference analysis, the court must ask "what it is that the officer is deliberately indifferent about." 574 F.3d at 1303. Ultimately in *Green*, the court concluded that there must be evidence of "conscious, deliberate indifference to an extreme risk of very serious harm to *the plaintiff*." *Id.* (emphasis added). Defendant Casaus takes this language to mean that Plaintiffs must show he saw and considered Lindsay and Ashley's safety—and was deliberately indifferent to the risk of harm to them—in the second or two he may have had to see their vehicle when he could finally see oncoming traffic from Eagle Ranch just a few feet from the intersection.

This reading of *Green* is too narrow. Plaintiffs need not prove Defendant Casaus was deliberately indifferent to *their* rights, but to the rights of the motorists he might have encountered on his high speed drive through the Albuquerque city streets. Support for this finding comes from the facts of *Green* itself. In *Green*, an officer pursuing a vehicle entered an intersection on a yellow light at the same time Green, another motorist, entered the intersection (also on a yellow light) and turned left in front of the officer. *Id.* at 1296. Green was ejected from his vehicle and died from his injuries. *Id.* at 1296–97. In finding that there was no substantive due process violation, the Tenth Circuit focused not on the fact that the officer did not deliberately intend to harm *that particular motorist*, but on the fact that the conduct of the officer was not sufficiently outrageous to shock the court's conscience. *Id.* at 1303–04. It mattered not that it was Green who entered the intersection—it could have been any member of the motoring public who happened to enter the

11

intersection at the same time as the officer. Instead, the court found that because the officer was engaged in a rapid law enforcement response, his conduct in entering the intersection on a yellow light was not conscience-shocking. *Id.*

In answering its question regarding "what the officer is deliberately indifferent about," the Tenth Circuit cited to the following language from an Eleventh Circuit case: "a substantive due process violation would, at the very least, require a showing of deliberate indifference to an extremely great risk of serious injury to *someone in Plaintiffs' position*." *Green*, 574 F.3d at 1303 (quoting *Waddell v. Hendry Cty. Sherriff's Office*, 329 F.3d 1300, 1306 (11th Cir. 2003) (emphasis added)). Both the cited language and the *Waddell* case itself detract from Defendant Casaus's argument. Thinking about "someone in Plaintiffs' position" does not refer to these specific Plaintiffs, it only means thinking about that limited segment of the population who could be in substantial risk of harm from the government actor, just as Plaintiffs were. In *Waddell*, the defendant sheriff's office released an inmate from jail under a "work release agreement" to work as a confidential informant (CI). 329 F. 3d at 1302. At some point thereafter, the CI consumed a substantial amount of alcohol and lost control of the car he was driving, hitting another vehicle. *Id.* at 1303. The occupants of the other vehicle, one of whom was killed and two were seriously injured, sued the sheriff's office, alleging that it had violated their substantive due process rights, in part because it had failed to monitor the CI in "willful and wanton disregard for the safety of the public . . . ." *Id.* at 1303–04. The court analyzed the claim under the "deliberate indifference" standard and noted that because the CI was not in custody, plaintiffs would need to show the sheriff's office was deliberately indifferent "to an extremely great risk of serious injury to someone in Plaintiffs' position." *Id.* at 1306 (citations omitted). The Court ultimately denied the plaintiffs'

claims, but it was not because the sheriffs' office could not have possibly foreseen an injury to *those three particular* plaintiffs, as Defendant Casaus is asserting here.[7] *Id.* at 1309.

Even in its earlier ruling in this case, the Tenth Circuit noted that a jury could find Defendant Casaus's conduct in "[s]peeding and jumping red lights" demonstrated a "conscious contempt of the lives *of others* and thus a form of reckless indifference to a fundamental right . . . ." *Browder v. City of Albuquerque*, 787 F.3d 1076, 1081 (10th Cir. 2015) (emphasis added). The court did not say Defendant Casaus demonstrated a conscious contempt for the lives of Lindsay and Ashley. Moreover, the court noted he had more than the 2.5 seconds it took to travel through the intersection to reflect on his intent; instead, it was "more like eight minutes"—obviously the Tenth Circuit did not believe Defendant Casaus had such prescience that he was thinking about ramming into Lindsay and Ashley Browder from the minute he left the BCSO dispatch facility. *Id.* at 1082.

Defendant argues that to adopt Plaintiffs' position would be to transform the deliberate indifference standard into a font of tort law. (Doc. 214 at 10.) He cites two Eleventh Circuit inmate cases to support his position, but both are inapposite to the facts in this case. (*Id.*) In *Losey v. Thompson*, the court found insufficient evidence to support an Eighth Amendment claim for deliberate indifference where neither the plaintiff inmate nor the defendant correctional officer had any reason to know that there was a risk of danger to plaintiff by an attack from another inmate. 596 F. App'x 783, 789 (11th Cir. 2015). In contrast to this case, there was no evidence in *Losey* that the officer was engaging in reckless behavior or was aware of circumstances that created a

---

[7] The Eleventh Circuit denied the claims because it was "unwilling to expand constitutional law to hold police departments responsible for the tortious acts of their confidential informants." *Waddell v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300, 1309 (11th Cir. 2003). The court found that the sheriff's office had made no decisions that "involved such an obviously extremely great risk that [the CI] would become intoxicated and then drive an automobile and then crash into another automobile causing serious injury as to shock the conscience." *Id.*

substantial risk of serious harm to the plaintiff or any inmate. *Id.* at 789–90. In *Goodman v. Kimbrough*, the court found that although two jail officials were negligent in performing their duties, they had not violated the plaintiff's substantive due process rights because there was no evidence they knew of and disregarded a risk of serious harm to the plaintiff. 718 F.3d 1325, 1331–32 (11th Cir. 2013). In so finding, the court noted that the plaintiff could not say "Well, they should have known[,]" because such a standard would be closer to negligence than to deliberate indifference. *Id.* at 1334. Defendant Casaus argues that holding him responsible for his knowing disregard of every motorist he could have possibly encountered would also be crossing the line from deliberate indifference to negligence. The Court disagrees. This situation is clearly distinguishable from *Goodman*. In *Goodman*, the jail officials had no evidence the plaintiff was at risk of harm. *Id.* at 1331–32. Defendant Casaus not only knew of the risk he posed to motorists who crossed his path, but he was in control of the danger he posed, had sufficient time to change his behavior, and he chose not to. The Court takes care to reiterate that Plaintiffs must not only establish that Defendant Casaus exhibited deliberate indifference to the substantial risk of serious harm to those bystanders he might have come across on his high speed drive across Albuquerque, but that his conduct must also shock the Court's conscience.

Finally, the Tenth Circuit has "defined 'an intent to place a person unreasonably at risk' (or reckless conduct) as when a state actor 'was aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard of the consequences.'" *Uhlrig*, 64 F.3d at 574 (citing *Medina*, 960 F.2d at 1496). In the context of an officer who uses state-issued equipment to behave in a reckless manner with a conscious contempt for the lives of other motorists he may come across, Plaintiffs do not need to establish that the officer was deliberately indifferent to them or to their car

specifically. Plaintiffs instead need to establish that Defendant Casaus's conduct in speeding and running a red light with no valid law enforcement objective was deliberately indifferent to the substantial risk of serious harm to the motoring public, and that his conduct shocks the Court's conscience. Plaintiffs have demonstrated that a jury could so find on this record viewed in a light most favorable to Plaintiffs.

### 2. Plaintiffs have demonstrated that Defendant Casaus had time to deliberate before the collision.

Defendant Casaus's second argument is that Plaintiffs cannot establish he had sufficient time to reflect on his actions. (Doc. 172 at 17–18.) The Tenth Circuit has "stated that 'liability for deliberate indifference . . . rests upon the luxury . . . of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations.'" *Green*, 574 F.3d at 1303 (quoting *Perez*, 432 F.3d at 1166 (internal citation omitted)). Defendant Casaus asks the Court to find that, at most, he had approximately one minute—beginning at the point where Mr. Marthe saw him activate his emergency lights; and at the least, he had only the brief moment—beginning when he was a few feet away from the intersection, where it was possible to see the Plaintiffs' vehicle, until the moment of impact—to deliberate on his actions. (Doc. 172 at 17–18.)

"In exploring when deliberately indifferent conduct can be conscience-shocking, we have applied that standard 'when actual deliberation is practical.'" *Green*, 574 F.3d at 1303 (quoting *Graves v. Thomas*, 450 F.3d 1215, 1221 (10th Cir. 2006) (internal citations omitted)). As Plaintiffs point out, Defendant cannot parse his conduct that evening into discrete elements, seeking a determination of deliberate indifference for each mile he sped over the limit or red light he ran.

Consequently, the Court will look at more than the second or two Defendant Casaus had immediately prior to entering the intersection at Eagle Ranch.

The Court finds that at least between the moment Mr. Marthe saw Defendant Casaus activate his emergency equipment just east of the Coors ramp[8] and the moment of impact, there was sufficient time for the officer to make an unhurried judgment about the dangers of driving recklessly without a valid law enforcement objective. *See Green*, 574 F.3d at 1303. He also had time if the Court were to start the deliberate indifference stopwatch at the moment he saw the traffic light at the intersection of Eagle Ranch and Paseo Del Norte: back when he came around the curve, glanced up the hill, and could see a vehicle stopped at the red light. Although Defendant Casaus was speeding, he had sufficient time to focus on his conduct, consider the consequences of flying through a red light at a blind intersection, and make a conscious choice to disregard the substantial risk of harm to other motorists at the intersection. The fact that his decision was allegedly uncomplicated by any competing obligation to perform a law enforcement action provides further support for a finding that he had time to deliberate. *Id.*

### 3.     The right at issue was clearly established at the time of the accident.

Defendant Casaus argues it was not clearly established that an officer who, with no valid law enforcement justification, uses his police-issued equipment to speed recklessly down city streets and through red lights violates a motorist's constitutional rights when the officer injures or

---

[8] Defendant Casaus testified that he began speeding well before he reached the Coors ramp. He said that he first noticed the vehicle driving dangerously around Second Street where the speed limit is 60 mph. (Doc. 146, Ex. 1 at 78:1–16.) He saw the vehicle weaving, glanced down at his odometer and noticed he was already traveling at or around 70 mph, and it appeared to him that the vehicle was pulling away from him. (*Id.* at 81:1–13; 90:25–91:8.) At that point, he accelerated to try to catch up to the vehicle, but he is not sure what speed he ultimately reached. (*Id.* at 91:9–16.) The Court finds that Defendant Casaus had sufficient time for reflection at the moment Mr. Marthe saw him activate his emergency lights near Coors; but he had even more time to deliberate, as he began speeding somewhere around Second Street.

kills that motorist as a result of his unlawful behavior.[9] As the Court stated in its earlier opinion, "Sergeant Casaus should reasonably have known that he could be liable for exhibiting '[conscious], deliberate indifference to the extreme risk of very serious harm to the plaintiff'" through the operation of his police SUV. (Doc. 30 at 13 (quoting *Green*, 574 F.3d at 1303).)

The Tenth Circuit agreed, noting "some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing." *Browder*, 787 F.3d at 1082. Although there are numerous "cases involving officers responding to emergency calls who unintentionally cause traffic accidents[,]" and none (save this one) "involving deadly traffic accidents with officers speeding on their own business[,] . . . the Supreme Court and [the Tenth Circuit] have both spoken unmistakably to this situation." *Id.* at 1083. The Supreme Court "expressly noted" in *Lewis* "when a private person suffers serious physical injury 'due to a police officer's *intentional misuse* of his vehicle[,]' a viable due process claim can arise." *Id.* (quoting *Lewis*, 523 U.S. at 854 n.13 (internal citation omitted)). And in *Williams*, the Tenth Circuit "warned that an officer who kills a person while speeding at 60 miles an hour on surface streets absent any emergency and in violation of state law invites a Fourteenth Amendment claim." *Id.* (citing *Williams v. City & Cty. of Denver*, 99 F.3d 1009 (10th Cir. 1996), *vacated*, 140 F.3d 855 (10th Cir. 1997)). Defendant Casaus's argument that *Williams* does not make the law in this area clearly established is unavailing. (Doc. 214 at 11.) In light of *Lewis* and *Green*, Defendant Casaus had sufficient notice that such unlawful behavior would be violative of Plaintiffs' constitutional rights.

---

[9] Defendant Casaus's reliance on *Apodaca v. Rio Arriba County Sheriff's Department* is misplaced. (Doc. 172 at 21 (citing 905 F.2d 1445, 1447 (10th Cir. 1990).) In *Apodaca*, the Tenth Circuit agreed "that negligent operation of a vehicle by a police officer does not rise to the level of a constitutional violation[,]" but again, the police officer in that case was speeding in response to a silent burglar alarm—a valid law enforcement objective. 905 F.2d at 1446–47. Defendant Casaus's conduct here amounted to more than mere negligence.

B.    § 41-4-12 Claim

Defendant Casaus also moves to dismiss Plaintiffs' claim against him pursuant to § 41-4-12 of the New Mexico Tort Claims Act. (Doc. 172 at 22–23.) He argues that there is no waiver under § 41-4-12 for reckless or negligent conduct. (*Id.* at 23.) Section 41-4-12 "waives immunity for liability for" violations of federal or state constitutional rights "committed by police officers acting within the scope of their duties." *Narney v. Daniels*, 846 P.2d 347, 354 (N.M. Ct. App. 1992) (citing N.M. Stat. Ann. §41-4-12 (1978)). Plaintiffs claim that Defendant Casaus violated their Fourteenth Amendment rights, and thus immunity would be waived under this section.

"Although a tort does not always rise to a constitutional violation, when it does, 'the federal remedy under § 1983 for deprivation of constitutional rights is supplementary to a state remedy.'" *Benavidez v. Shutiva*, 350 P.3d 1234, 1240 (N.M. Ct. App. 2015) (quoting *Wells v. Valencia Cty.*, 644 P.2d 517, 521 (internal citations omitted)). "Thus, '[t]he [NMTCA] does not prohibit a plaintiff from bringing an action for damages under the [NMTCA] where the plaintiff also pursues, by reason of the same occurrence, an action against the same government under 42 U.S.C. § 1983.'" *Id.* (quoting *Wells*, 644 P.2d at 521; citing § 41–4–12); *see also Blea v. City of Espanola*, 870 P.2d 755, 760 (N.M. Ct. App. 1994) (holding "allegations that [officers'] actions were grossly negligent or reckless were sufficient to state a claim . . .  for which immunity has been waived under Section 41-4-12"). Defendant's motion is denied; Plaintiffs' claim pursuant to § 41-4-12 remains.

C.    **Subject Matter Jurisdiction**

In his reply, Defendant Casaus raises the issue of subject matter jurisdiction, arguing that because Plaintiffs "will not unequivocally admit that Mr. Casaus was acting in the course and scope of his employment as a law enforcement officer at all times material," the Court lacks subject

matter jurisdiction. (Doc. 214 at 4–5.) Defendant Casaus's argument fails for two reasons: first, Plaintiffs do not argue that Defendant Casaus was not acting in the course and scope of his employment, they contend he lacked a valid law enforcement objective. These two issues are distinct. Second, Defendant Casaus confuses the factual issue of whether he was "acting in the course and scope of his employment" with the jurisdictional issue of whether he was "acting under color of law." The Court will examine each of these issues in turn.

First, Plaintiffs have made "no allegation Casaus was not entitled to be in uniform and drive his vehicle," nor that he was not acting in the course and scope of his employment. (*See* Doc. 192 at 11 n.11; *see also* Doc. 1, Ex. A Compl. ¶ 8 ("Defendant Adam Casaus was at all times material to this Complaint acting within the course and scope of his employment as a law enforcement officer").) Indeed, to hold Defendant Casaus liable under § 41-4-12, Plaintiffs must establish that he was "acting within the scope of [his] duties." § 41-4-12. "Generally, whether an employee is acting in the course and scope of employment is a question of fact." *Narney*, 846 P.2d at 354–55 (citing *McCauley v. Ray*, 453 P.2d 192, 202 (N.M. 1968)). Plaintiffs' argument is whether Defendant Casaus had a valid law enforcement objective for driving in the manner he did that night. That is a separate question from the factual issue of whether he was acting within the course and scope of employment.

The jurisdictional issue is also separate from the factual issue of whether he was acting with a valid law enforcement purpose. "The 'under color of state law' requirement is 'a jurisdictional requisite for a § 1983 action . . . .'" *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 315 (1981)). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action [has] exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with

19

the authority of state law.'" *Id.* at 492–93 (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal citations omitted)). "The authority with which the defendant is allegedly 'clothed' may be either actual or apparent." *Id.* at 493 (citing *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994) (internal citations omitted); *cf. Griffin v. Maryland*, 378 U.S. 130, 135 (1964) ("private security guard who wore a sheriff's badge and identified himself as a deputy sheriff 'purported to exercise the authority of a deputy sheriff[,]' and was therefore a state actor for purposes of the equal protection clause of the Fourteenth Amendment")).

Here, Defendant Casaus was in his APD-issued vehicle, wearing a uniform, and had activated his emergency equipment. These facts constitute sufficient indicia that he had clothed himself with the authority of state law and was a state actor for purposes of the Fourteenth Amendment, despite his allegedly unlawful purpose. *See Griffin*, 378 U.S. at 135. An officer can act under color of state law, but without a valid law enforcement objective. *See, e.g.*, *Fuerschbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1204 (10th Cir. 2006) (finding law enforcement officers, acting under color of state law, who falsely arrested a non-consenting citizen as a practical joke, did not act in furtherance of a legitimate law enforcement interest). Plaintiffs contend Defendant Casaus was acting under color of state law, but without a legitimate law enforcement interest. (*See* Doc. 192 at 11 n.11.) Defendant Casaus's motion to dismiss on the basis of lack of subject matter jurisdiction is not well-taken and is denied.

## V.    Conclusion

The Court finds there are genuine disputes of material fact regarding Plaintiffs' substantive due process claim, and summary judgment is inappropriate. Further, the Court finds that there is evidence sufficient for a jury to find that Defendant Casaus was deliberately indifferent to the substantial risk of harm he posed to the motoring public and that he had sufficient time to deliberate

before the collision. The law in this area was clearly established on the night of the accident, and Defendant Casaus is not entitled to qualified immunity. Defendant Casaus's motion is denied as to qualified immunity and summary judgment on Plaintiffs' Fourteenth Amendment claim.

Defendant Casaus's motion for summary judgment is denied with respect to Plaintiffs' claim under § 41-4-12. Defendant Casaus's motion to dismiss on the basis of lack of subject matter jurisdiction is also denied.

**THEREFORE,**

**IT IS ORDERED** that Defendant Casaus'[s] Motion for Partial Summary Judgment Requesting Dismissal of Counts I and IV (Section 41-4-12 Claim), and Memorandum in Support (Doc. 172) is **DENIED**.

**IT IS FURTHER ODERED** that Defendant Casaus's motion to dismiss on the basis of lack of subject matter jurisdiction (Doc. 214) is not well-taken and is **DENIED**.

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**