IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHARLES BROWDER, in his individual
capacity and as Personal Representative
of The Estate of ASHLEY BROWDER,
LINDSAY BROWDER, and DONNA
BROWDER

        Plaintiffs,

v.                                                                                                       No. CIV 13-0599 RB/KBM

CITY OF ALBUQUERQUE, and ADAM
CASAUS in his individual capacity,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Second Motion for Relief and Sanctions Based on Intentional Spoliation of Evidence by Defendant City of Albuquerque, filed on March 18, 2016. (Doc. 179.) Jurisdiction arises under 28 U.S.C. § 1331. Having considered the submissions of counsel and relevant law, the Court **DEFERS RULING** on Plaintiffs' motion and requests supplementary briefs.

**I.     Procedural History and Statement of Facts[1]**

This case arises from a tragic traffic accident that occurred when Defendant Casaus's police vehicle collided with Plaintiff Lindsay Browder's vehicle. At issue in this motion for relief and sanctions is video footage from two city intersections. Despite the fact that several officials from the Albuquerque Police Department (APD) and Bernalillo County Sheriff's Office (BCSO)

---

[1] The Court recites only that portion of facts and procedural history pertinent to this motion. The Court draws the relevant facts both from the parties' briefs and exhibits submitted for this motion (*see* Docs. 179, 200, 206), as well as from the briefs and exhibits the parties submitted for Plaintiffs' partial motion for summary judgment (*see* Doc. 146, 163, 181).

apparently saw the footage and APD Chief Schultz directed that the footage be preserved, the footage was lost before Plaintiffs were allowed access to it.

### A.     The Incident

Defendant Adam Casaus, a sergeant with the Albuquerque Police Department (APD), was involved in a traffic accident with Plaintiffs Lindsay and Ashley Browder at approximately 1:31 or 1:32 a.m. on Sunday, February 10, 2013. (Doc. 8 at ¶ 26; Doc. 146, Ex. 1 at 150:13–151:20, Ex. 3 at 72:3–5.) Defendant Casaus, driving westbound on Paseo Del Norte, allegedly saw a vehicle ahead of him driving erratically, and he sped up to pull the driver over. (Doc. 163, Ex. A at 72:22–74:16, 78:9–81:5; Doc. 181 at 7.) Plaintiffs dispute Defendant Casaus's assertion that he was ever following a vehicle. (*See* Doc. 205 at 5–7.) Defendant Casaus testified that he could not identify the make and model of the vehicle or its license plate number, but he could see tall, skinny taillights. (Doc. 163, Ex. A at 75:12–76:7; Doc. 181 at 7.) He believes he saw the vehicle he was following go through the intersection at Eagle Ranch and Paseo Del Norte, the same intersection where the parties collided. (Doc. 146, Ex. 1 at 95:13–97:12.)

As he approached that intersection, he also saw a vehicle stopped in the right-hand lane of westbound Paseo Del Norte waiting on a red light. (*Id.* at 97:16–20; Doc. 163, Ex. 1 at 85:6–11.) The stopped vehicle belonged to Ms. Jana Villanueva, an eyewitness to the accident who had merged onto westbound Paseo Del Norte from the Coors ramp driving a black 2008 Cadillac with tall taillights. (Doc. 146, Ex. 2 at 7, Ex. 3 at 46:2–5.) Defendant Casaus collided with the Browder vehicle in the intersection of Eagle Ranch Road and Paseo Del Norte. (Doc. 146, Ex. 1 at 150:13–151:20.) There is a factual dispute in this case regarding what color the traffic light was when Defendant Casaus entered the intersection. (*See* Doc. 205 at 4–7.)

B.     The Video Footage

Investigating Deputy Leonard Armijo of the Bernalillo County Sheriff's Office, who took the lead in the initial investigation into the accident, confirmed Ms. Villanueva's story. (Doc. 146, Ex. 2 at 3, 7.) Deputy Armijo viewed video footage recorded from a traffic camera located at the intersection of Coors Boulevard and La Orilla Road NW and saw that Ms. Villanueva's vehicle was at that location approximately two minutes prior to the accident. (*Id.* at 7.) He concluded that Ms. Villanueva's Cadillac could not have been the vehicle Defendant Casaus was allegedly following. (*Id.*; *see also* Doc. 146, Ex. 3 at 92:4–11.)

The video footage Deputy Armijo saw came from the Real Time Crime Center (RTCC). (Doc. 146, Ex. 2 at 7.) The RTCC is a division of the City of Albuquerque and the APD. (*See* Doc. 200 at 3 ¶ 4, Ex. A at 87:10, Ex. C at 5:15–23.) The RTCC established a citywide video network using city traffic cameras and surveillance systems from local businesses. (Doc. 200, Ex. D at 12:3–13.) The RTCC was not fully operational in February 2013; in fact, the City did not completely finish building the center until March 2013. (Doc. 200, Ex. C at 6:1–3, 31:8–15.) On the day of February 10, 2013, however, at least three traffic cameras captured footage Plaintiffs assert are relevant to this lawsuit. (*See* Doc. 179 at 3–4.) These cameras are located at the intersections of Paseo Del Norte and Eagle Ranch Road (where the accident occurred), Coors and La Orilla NW (where Deputy Armijo saw Ms. Villanueva's Cadillac minutes before the accident), and Paseo Del Norte and Golf Course Road. (*See* Doc. 179 at 4–5, Exs. 1–3.)

Plaintiffs received video footage from all three intersections, but the parties discovered at some point much later in this litigation that the footage from the Paseo Del Norte and Eagle Ranch Road and Coors and La Orilla NW intersections is from Saturday, February 9, rather than from the date of the accident, Sunday, February 10. (*See* Doc. 179 at 4–5, Exs. 1–3.) In the 24 hours after

the accident, however, several officials from the APD, BCSO, and the RTCC were able to watch video footage from the correct date and time, as detailed infra. It is not clear from the testimony submitted to the Court whether the correct footage from February 10, 2013 was ever retrieved and burned onto CDs, and in a related vein, whether Deputy Armijo saw footage from the CD labeled February 9, 2013, or if he had access to different CDs with footage from February 10, 2013.

RTCC Director Mr. T.J. Wilham looked at footage from the relevant intersections with APD Chief Schultz on Sunday morning, well within 24 hours of the accident.[2] (Doc. 179, Ex. 5 at 34:5–25, 43:1–24.) Mr. Wilham recalls seeing (1) Plaintiff Lindsay Browder's vehicle on footage from one of the cameras; and (2) squad cards pull up on Eagle Ranch to block traffic on footage from Eagle Ranch and Paseo Del Norte, in spite of the fact that the camera was not facing the intersection. (*Id.* at 23:8–24:12, 43:6–18.) Chief Schultz directed Mr. Wilham to give the footage to the necessary officials. (*Id.* at 43:19–24.)

Deputy Paul Gonzales, who acted as the secondary investigator from the BCSO, also saw footage at the RTCC. (Doc. 200, Ex. A at 49:10–22, 52:1–3, 87:9–12.) Deputy Gonzales was called to the scene of the accident around 2:30 a.m. on February 10. (*Id.* at 49:19–22.) His primary responsibilities involved photographing and diagramming the accident scene. (*Id.* at 52:4–25, 61:14–22.) After he finished at the scene, he went to the RTCC to see if he could find any video footage from traffic cameras at or near the relevant intersection. (*Id.* at 87:9–12.) He found footage from four intersections: Coors Boulevard and Alameda (south of Paseo Del Norte and Coors),

---

[2] Mr. Wilham recalls that he viewed the footage with Chief Schultz before anyone from BCSO contacted him. (*See* Doc. 179, Ex. 5 at 25:10–17.) It appears that Deputy Gonzales obtained the video and CDs from Sergeant Felipe Garcia, but the record is murky on when the various officials visited the RTCC and when the video footage was burned onto CDs. (Doc. 200, Ex. D at 19:9–12, 20:6–14.)

Coors Boulevard and Eagle Ranch Road (south of Paseo Del Norte and Coors), Paseo Del Norte and Eagle Ranch Road, and Paseo Del Norte and Golf Course Road. (*Id.* at 87:18–25.)

Deputy Gonzales testified he was unable to see footage of the accident itself, because the camera at Paseo Del Norte and Eagle Ranch Road was pointed toward a gas station in the northwest corner of the intersection instead of toward the street. (*Id.* at 88:7–16.) He believes he saw Plaintiff Lindsay Browder's vehicle turn from Coors onto Eagle Ranch Road. (*Id.* at 88:23–24.) He does not remember seeing any vehicles that might match the one Defendant Casaus was allegedly following. (*Id.* at 89:10–15.) He got video of the four intersections from approximately ten minutes prior to the accident through ten minutes after, covering the approximate period from 1:20–1:40 a.m., burned the video footage onto CDs, and took the CDs to Deputy Armijo. (*Id.* at 89:1–4.)

Sergeant Felipe Garcia, the RTCC employee charged with establishing the video network and the person who was the most qualified at the time to respond to requests and produce video, also came into the RTCC on Sunday morning to help pull video footage. (Doc. 179, Ex. 5 at 33:11–14; Doc. 200 at 3 ¶ 6 and Ex. D at 11:12–18, 12:3–13:6.) Mr. Wilham asserts this was the first time Sergeant Garcia had ever been instructed to pull video from the servers, so they were all learning as they went. (Doc. 200, Ex. C at 30:1–4.) Sergeant Garcia testified that he was directed to pull video from three different traffic cameras for a specific time period. (Doc. 200, Ex. D at 13:2–25.) He knew the video was related to a fatal traffic accident involving an APD officer. (*Id.* at 19:9–25.)

Each video pulled from the RTCC servers has a time and date stamp. (*Id.* at 14:5–11.) When he pulled the videos from the server where these three traffic cameras were stored, Sergeant Garcia discovered that the time shown on the server was off by one hour. (*Id.* at 14:12–24.) Consequently, instead of pulling video footage from February 10 around 1:30 a.m., Sergeant

5

Garcia realized he would need to pull video from around 12:30 a.m. (or 00:30). (*See id.* at 14:22–15:19; *see also* Doc. 179, Exs. 1–3.) Sergeant Garcia testified that in order to obtain video footage from an intersection camera, he found the intersection he needed in the system, clicked on the desired date from a pop-up calendar (February 10, 2013), and used a scroll bar to select the desired time (00:30). (*Id.* at 20:22–23:24.) Because someone had directed him to pull video from three intersections, he repeated this process three separate times on three separate computers. (*Id.* at 23:10–24:17.) But instead of inputting the correct date and time of February 10, 2013 and 00:30 three separate times, Sergeant Garcia input February 9, 2013 for two of the three intersections (the two located at Eagle Ranch Road and Paseo Del Norte, and Coors and La Orilla NW) and February 10, 2013 for the third intersection (the one located at Paseo Del Norte and Golf Course Road).[3] (*Id.* at 15:8–16:10, 18:10–15, 24:6–23.)

Sergeant Garcia asserts that he did not select the wrong date intentionally, and he did not know he had selected the wrong date until counsel for Plaintiffs deposed him on February 9, 2016. (*Id.* at 24:18–25:11.) Because the video only stays in the server system for 24 to 72 hours, it is not possible to retrieve the correct footage now. (*Id.* at 18:16–21.) It is not clear from the record who Sergeant Garcia gave the CDs to; he testified that he does not know when they were given to the investigators, or who else saw the footage other than Mr. Wilham. (*Id.* at 56:20–25, 62:14–63:21.) Sergeant Garcia stated that when evidentiary video is given to an officer, it is up to the officer to tag it into evidence. (*Id.* at 28:12–14.) RTCC policy does not allow its employees to store video. (*Id.* at 27:22–28:8.) He also stated that he does not have the ability to edit videos on RTCC computers. (*Id.* at 28:16–18.)

---

[3] Deputy Gonzales testified that he found footage from four intersections, but neither party submitted either a CD for the fourth intersection or testimony from Sergeant Garcia about pulling video from a fourth intersection. (*See* Doc. 200, Ex. A at 87:18–25.)

It is unclear from the record if the CDs Deputy Gonzales burned at the RTCC and brought to Deputy Armijo contain footage from February 9 or February 10. There is no testimony to establish that Deputy Armijo ever saw video footage at the RTCC himself; rather, Deputy Gonzales testified that he brought CDs to Deputy Armijo. (Doc. 200, Ex. A at 89:1–4.) Deputy Armijo reported that he saw Ms. Villanueva's car on the footage from the intersection of Coors Boulevard and La Orilla Road NW. (Doc. 146, Ex. 2 at 7.) However, it does not appear that either Deputy Armijo or Deputy Gonzales have been deposed about the date stamp mix-up after the parties discovered it.[4] Consequently, it is unclear whether Deputy Armijo saw the footage that is contained on the CD marked February 9, 2013, or whether he saw something else.

Defendant City of Albuquerque (the City) asserts that because the BCSO handled the initial investigation, no official from the City (including the APD) ever independently obtained copies of the footage. (Doc. 200 at 10.) The City asserts (without providing testimony to this effect) that the APD Internal Affairs investigators did not obtain footage from the RTCC directly, rather, they received copies of the footage from the BCSO. (*Id.*)

**II.      Discussion**

    **A.      Federal law governs Plaintiffs' motion, which is properly brought pursuant to Rule 37.**

Defendants assert that Plaintiffs improperly rely on New Mexico law to support their motion and question whether the motion is properly brought under Federal Rule of Civil Procedure 37. (Doc. 200 at 6.) Rule 37 permits the Court to cure prejudice where "electronically stored information that should have been preserved in the anticipation . . . of litigation is lost because a

---

[4] There is some criminal trial testimony from Deputy Gonzales about the date stamp, but he was not questioned thoroughly about the mix-up, and the Court gleaned no real information regarding the footage he brought back to Deputy Armijo. (*See* Doc. 200, Ex. 2 at 29:11–30:10.) It is not particularly clear from the transcript whether counsel for Plaintiffs had yet realized the CDs did not show footage from the correct date and time. (*See id.*)

7

party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery . . . ." Fed. R. Civ. P. 37(e)(1). *See also Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) ("plaintiffs must be 'diligent in the defense of their own interests,' and should seek sanctions under Federal Rule of Civil Procedure 37 to remedy any prejudice caused by spoliation) (citing *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1156 (7th Cir. 1998)). Plaintiffs' motion is properly brought pursuant to Rule 37.

Defendants are correct that federal law governs a motion requesting sanctions and relief for spoliation. *See* Fed. R. Civ. P. 37(e). Judge Browning spoke to the application of federal law to spoliation issues in *Peshlakai v. Ruiz*, No. CIV 13-0752 JB/ACT, 2014 WL 1947680, at *1 (D.N.M. Apr. 1, 2014). While the Tenth Circuit has not spoken to this issue directly, Judge Browning found that applying federal law is proper for two reasons: (1) "the authority to impose sanctions for spoliated evidence arises not from substantive law but, rather, 'from a court's inherent power to control the judicial process[,]'" *id.* (quoting *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (internal citations omitted)); and (2) "a spoliation ruling is evidentiary in nature and federal courts generally apply their own evidentiary rules in both federal question and diversity matters." *Id.* (quoting *Adkins*, 554 F.3d at 652 (internal citations omitted)). While Plaintiffs moved for sanctions pursuant to Rule 37 instead of during trial, as in *Peshlakai*, Judge Browning's reasoning is still on point. The Federal Rules of Civil Procedure govern discovery in this Court, regardless of whether the case has been removed from state court. *See* Fed. R. Civ. P. 1. Thus, the Court will look to federal law in ruling on Plaintiffs' motion.

**B.     The Court requires supplementation before it will rule on Plaintiffs' motion.**

The Court requires supplementation from the parties on the following issues:

(1) whether Deputy Armijo saw the footage shown in Exhibits 1–2 (dated February 9, 2013) as submitted to the Court, or whether he remembers seeing different footage and/or a different date stamp;

(2) if Deputy Armijo remembers seeing something different from that in the exhibits, the Court also requires additional testimony regarding the transfer of custody of the CDs from the BCSO to the APD; and

(3) if the City or BCSO has additional information or testimony regarding who obtained copies of the CDs initially, the City shall also disclose that information.

The parties shall present the new information and any additional arguments to the Court in supplemental briefs with a maximum of five pages per brief, not including any exhibits, as follows: Defendant City of Albuquerque shall submit its brief no later than June 10, 2016; Plaintiffs shall submit their brief (if one is necessary) no later than June 17, 2016.

**THEREFORE,**

**IT IS ORDERED** that a decision on Plaintiffs' Second Motion for Relief and Sanctions Based on Intentional Spoliation of Evidence by Defendant City of Albuquerque (Doc. 179) is **DEFERRED**;

**IT IS FURTHER ORDERED** that the parties shall submit supplemental briefs as described in this order.

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE