## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CHARLES BROWDER, in his individual
capacity and as Personal Representative
of The Estate of ASHLEY BROWDER,
LINDSAY BROWDER and DONNA
BROWDER,

       Plaintiffs,

v.                                      No. CIV 13-0599 RB/KBM

CITY OF ALBUQUERQUE, and ADAM
CASAUS in his individual capacity,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendant City of Albuquerque's Second Motion for Partial Summary Judgment Requesting Dismissal of Counts I, II, III, and IV (Section 41-4-12 Claim), and Memorandum in Support, filed on March 23, 2016 (Doc. 183). Jurisdiction arises under 28 U.S.C. § 1331. Having considered the submissions of counsel and relevant law, the Court will **GRANT IN PART** the motion.

## I.    Procedural Background[1]

This case arises from a tragic traffic accident that occurred in the early-morning hours of February 10, 2013, when Defendant Casaus, driving a police vehicle, collided with the car driven by Plaintiff Lindsay Browder. Lindsay's sister, Ashley Browder, was a passenger in Lindsay's vehicle. Lindsay was seriously injured and Ashley was fatally injured as a result of the collision.

---

[1] The litigation surrounding this accident has already been long and involved; therefore, the Court recites only those portions of the facts and procedural history relevant to this motion.

At issue in this motion for summary judgment is whether Defendant City of Albuquerque (the City) can raise an argument regarding the Plaintiffs' state law remedies for the first time now, and whether Plaintiffs' state law claims for negligent supervision and retention in Count III and their claim pled against the City under N.M. Stat. Ann. § 41-4-12 in Count IV can survive.[2]

Defendant City filed a motion for judgment on the pleadings in September 2013, seeking dismissal of (1) the Albuquerque Police Department (APD) and Chief Raymond Schultz as parties; (2) the claims on behalf of Plaintiffs Charles and Donna Browder; and (3) the claims against the City under 42 U.S.C. § 1983 on the basis that the complaint did not set forth plausible § 1983 claims against Defendant Casaus. (*See* Doc. 14.) The Court granted the City's motion in part, dismissing the APD and Chief Schultz as parties and the federal claims on behalf of Plaintiffs Charles and Donna Browder. (Doc. 30 at 5–8.) The Court denied the portion of the City's motion seeking dismissal of the Plaintiffs' § 1983 claims. (*Id.* at 8–12.) In the same opinion, the Court also denied Defendant Casaus's separate motion to dismiss seeking qualified immunity. (*Id.* at 12–14; *see also* Doc. 20.)

Defendants jointly appealed to the Tenth Circuit seeking reversal of the Court's decision. (Doc. 33.) Specifically, the City asked the Tenth Circuit to "exercise its pendent appellate jurisdiction[,] since the resolution of the issue involved in the qualified immunity analysis as to whether the facts as alleged by Plaintiffs establish that Defendant Adam Casaus committed a constitutional violation will also resolve whether Plaintiffs can establish a Section 1983 municipal liability claim against" the City. (*Id.* at 2 (citation omitted).) Neither Defendant has previously asserted a defense on the basis that Plaintiffs have not utilized comparable state remedies. *See*

---

[2] The City also moved for summary judgment on Count II and the negligent hiring and training claims in Count III, but the parties jointly dismissed these claims shortly after the City's motion was filed. (*See* Docs. 183, 213, 216.) Consequently, the Court denies those portions of the City's motion as moot.

*Browder v. City of Albuquerque*, 787 F.3d 1076, 1083–86 & n.2 (10th Cir. 2015) (Gorsuch, J., concurring). The Tenth Circuit ultimately denied the parties' appeal. *See id.* at 1083. The parties have now had time to conduct discovery, and the City brings this motion for summary judgment, which is ripe and ready for decision.

## II.    Statement of Facts[3]

The APD has several departments charged with investigating complaints, allegations of misconduct, and identifying employees who may need additional services. (*See id.*, Exs. O–R; Doc. 209 at 2.) They include: (1) the Internal Affairs Unit, which investigates allegations of misconduct by APD personnel and provides quarterly and annual reports to the various departments and officials (Doc. 183 ¶¶ 25, 29–30, and Ex. O); (2) the Independent Review Office, which accepts and investigates all citizen-police complaints and provides annual reports regarding its reviews and investigations (*id.* at ¶¶ 26, 30, and Ex. O); (3) the Operations Review Section, which is responsible for, among other things, distribution and tracking of Internal Affairs complaints, conducting audits, and analyzing vehicle pursuits (*id.* at ¶ 27 and Ex. P); (4) the Accident Review Board, which reviews all accidents involving officers (*see id.* at ¶ 32 and Ex. Q at 64:2–8); and (5) the Early Intervention System, which emphasizes training and counseling and operates as a tool to identify employees who have shown a propensity for involvement in incidents of potential misconduct (*id.* at ¶ 31 and Ex. R). After an Internal Affairs or Independent Review Office complaint is investigated, it goes through the chain of command for the employee so that the chain can review the investigation and make findings and recommendations concerning the complaint. (*See id.*, Ex. Q at 62:5–63:10.)

---

[3] In accordance with summary judgment standards, the Court recites all admissible facts in a light most favorable to the Plaintiffs. Fed. R. Civ. P. 56; *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Almost without exception, the parties do not dispute the facts relevant to this motion. (*See* Doc. 209 at 2.)

The record contains details of five incidents from 2007–2012 wherein Defendant Casaus was investigated by Internal Affairs or the Independent Review Office, and one incident wherein he was counseled after being identified by the Early Intervention System. (*Id.* at ¶ 37 and Ex. T.)

(1)     In February 2007, Defendant Casaus received a Letter of Reprimand as discipline for losing his APD-issued laser radar. (*Id.*, Ex. T at 18–24.)

(2)     In May 2008, a citizen complained that he saw Defendant Casaus shopping while off-duty and driving his APD-issued vehicle. (*Id.* at 17.) Sergeant Ratchner interviewed Defendant Casaus and learned that he was on his way home from a police training, dressed appropriately, had his firearm and his badge, and was available to respond to a call. (*Id.* at 16.) Sergeant Ratchner recommended no further action be taken. (*Id.*)

(3)     Defendant Casaus was found to have violated APD policy in February 2010, when he allowed his then-girlfriend to accompany him while on duty without the permission of his supervisors. (*Id.* at 10.) Commander Eric Garcia imposed an eight hour suspension, which was held in abeyance for six months.[4] (*Id.* at 11–12.)

(4)     In February 2011, Commander Eric Garcia issued Defendant Casaus a Letter of Reprimand for an accident that occurred in November 2010, when Casaus backed out of his driveway and hit another vehicle. (*Id.* at 8–9, 14–15.) The Safety Review Board ruled that the accident was preventable. (*Id.*)

(5)     In November 2011 Defendant Casaus investigated a traffic accident between a citizen and another officer. (*Id.* at 4–7.) Casaus's report showed that the citizen was at fault for the crash. (*Id.* at 5.) Under the space marked "apparent contributing factors," Casaus listed "no

---

[4] Plaintiffs assert that the Internal Affairs investigator questioned Casaus's "honesty in connection with the underlying events and the investigation," and there was evidence that he asked a co-worker to lie for him. (Doc. 209 at 6.) Plaintiffs note that there is transcript testimony to this affect, but it is not yet available. (*Id.* at 6 n.6.)

4

driver error," which the citizen understood as a determination that the officer involved in the accident was not at fault. (*Id.*) The citizen complained that Defendant Casaus failed to fully and accurately report the accident. (*Id.* at 4.) An Independent Review Officer (retired Judge Tommy Jewell) investigated and noted that rather than being dishonest, Defendant Casaus was aware that the officer involved had violated department procedure, which was not something Casaus was authorized to deal with. (*Id.* at 5.) Moreover, because there was nothing at the scene for Defendant Casaus to use to estimate the officer's speed, he had no reasonable way to prove that the officer committed a driver error. (*Id.*) Investigator Jewell concluded Casaus "conducted a thorough and proper investigation of the crash and . . . reported it fully and accurately." (*Id.* at 5–6.)

(6)     In December 2012, Defendant Casaus was identified by the Early Intervention System as having used force three times within the previous twelve months. (*Id.* at 2.) Commander Macario Page discussed the incidents with Casaus and was satisfied with their positive interaction. (*Id.*) Commander Page felt that Casaus understood the importance of what they had discussed, and he had no other concerns. (*Id.*)

Defendant Casaus, a member of the APD's 82nd Cadet Class, completed numerous academic and field training programs during his employment with the APD. (*Id.*, Exs. E–N.) In April 2012, Defendant Casaus related a story to a group of cadets regarding his own training for the traffic unit. (*Id.*, Ex. M.) When he first started in traffic, he asked a fellow officer to tear up a friend's traffic ticket as a favor, which was in violation of APD policy. (*See id.* at 03:40–04:50.) Consequently, Defendant Casaus earned the nickname of "That Guy," ("that guy" who would make such a request). (*Id.*) There is no evidence in the record that anyone reported Defendant

Casaus for the original incident or for sharing the story during the training, nor is there any record that he was ever counseled or reprimanded for asking for this favor. (*See id.*, Ex. T.)

## III.    Summary Judgment Standard

### A.    Summary Judgment Standard of Review

Summary judgment is appropriate when the Court, viewing the record in the light most favorable to the nonmoving party, determines "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). A fact is "material" if it could influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a reasonable trier of fact could return a verdict for either party. *Id.* In cases where the moving party will not bear the burden of persuasion at trial, the movant bears the initial responsibility of identifying "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324). The nonmoving party may not rely merely on allegations or denials in its own pleadings. Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S. at 324. Additionally, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that

something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citations omitted). Although the material submitted by the parties in support of and in opposition to the motion must be "construed liberally and in favor of the party opposing the motion[,]" *Florom v. Elliott Mfg.*, 867 F.2d 570, 574 (10th Cir. 1989) (citation omitted), "the burden on the moving party may be discharged by" demonstrating to the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

## IV.    Discussion

### A.    The Court declines to apply the rule of *Parratt* to Plaintiffs' § 1983 claim in Count I.

As an initial matter, the City asserts that Plaintiffs have adequate state law remedies available to redress their injuries, and as such, the Court should dismiss the federal claims under Count I. (Doc. 183 at 12–14.) The City refers, of course, to the decision in *Parratt v. Taylor*, which directs courts to abstain from hearing procedural due process claims where "the State provides an adequate postdeprivation remedy." *Albright v. Oliver*, 510 U.S. 266, 284 (1994) (citing *Parratt v. Taylor*, 451 U.S. 527, 535–44 (1981) (subsequent citations omitted)). While Plaintiffs' claim is one of substantive, not procedural, due process, the City urges the Court to consider Judge Gorsuch's concurring opinion in the Tenth Circuit's earlier ruling in this case. *Browder*, 787 F.3d at 1083–86.

Judge Gorsuch opined that "when a rogue state official acting in defiance of state law causes a constitutional injury there's every reason to suppose an established state tort law remedy would do as much as a novel federal remedy might and no reason exists to duplicate the effort." *Id.* at 1084 (citing *Parratt*, 451 U.S. at 543–44; *Mann v. City of Tucson, Dep't of Police*, 782 F.2d 790, 798 (Sneed, J., concurring)). He noted that despite the fact that Plaintiffs bring a substantive

due process claim, the Browders' accident "highlights . . . the sort of thing state courts have long and ably redressed." *Id.* In Judge Gorsuch's opinion, "established tort principles (e.g., negligence)[,]" may "provide the same relief" as that available from a federal court "using primordial constitutional tort principles that must be expounded more or less on the fly—by asking what's 'arbitrary' or what 'shocks the judicial conscience.'" *Id.* (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1988)).

This case may have been appropriate to expand on the Supreme Court's rule in *Parratt*, but the Court declines to do so at this late juncture. The Court is not required to send the case back to state court, because as Judge Gorsuch also notes, federal courts have been granted authority pursuant to 42 U.S.C. § 1983 "to remedy constitutional violations by state officials acting under color of state law," *id.* at 1083 (citing *Monroe v. Pape*, 365 U.S. 167 (1961)), and the law has been clearly established that substantive due process violations fall within this grant of authority. *See, e.g.*, *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("A plaintiff . . . may invoke § 1983" for a substantive due process violation "regardless of any state-tort remedy that might be available to compensate him for the deprivation of these rights.")). The Court and the parties have invested considerable time and resources into litigating these claims, and for the City to seek a dismissal now on the basis of an argument that was available to it immediately upon removal is inequitable. The day will come when a similarly-situated case will test the waters of expanding the rule of *Parratt* to include certain substantive due process claims. The Court advises the defendants in such a case to raise the issue earlier than the City did here. The City's motion is denied with respect to this issue.[5]

---

[5] Plaintiffs argued against this issue on two bases: (1) the City waived the right to raise this defense when it did not include it in its earlier motion for judgment on the pleadings; and (2) the City does not have standing to raise the defense. (Doc. 209 at 3–5.) Both arguments are without merit. Plaintiffs cite no authority to show how the City waived

**B.**     **Plaintiffs failed to show that the City's negligence in supervising or retaining Defendant Casaus proximately caused their injuries with respect to Count III.**

Defendant City next argues Plaintiffs cannot maintain their claims for Negligent Supervision and Retention under § 41-4-12 of the NMTCA. (Doc. 183 at 26.) The City can be liable for the deprivation of Plaintiffs' constitutional rights by Defendant Casaus under a theory of negligent supervision if Plaintiffs can prove that the City negligently supervised Casaus, Casaus was acting in the course and scope of his employment when he violated Plaintiffs' rights, and the City's negligence proximately caused the violation. *See Gonzales v. Sw. Sec. & Prot. Agency, Inc.*, 665 P.2d 810, 811–12 (N.M. Ct. App. 2004) (citations omitted); *McDermitt v. Corr. Corp. of Am.*, 814 P.2d 115, 116 (N.M. Ct. App. 1991). The City can be liable under a theory of negligent retention if Plaintiffs show that Defendant Casaus was unfit, the City knew or should have known he was unfit, and the City's negligence in retaining him was a proximate cause of Plaintiffs' injuries. *Lessard v. Coronado Paint & Decorating Ctr.*, 168 P.3d 155, 165, 168 (N.M. Ct. App. 2007) (citations omitted).

The City asserts Plaintiffs have failed to show that the City's alleged negligence was a proximate cause of their injuries under either theory of recovery. (Doc. 183 at 26.) Plaintiffs mention only two specific instances of conduct from the record to support their negligent supervision and retention claim: (1) Defendant Casaus's request that a fellow officer tear up a friend's traffic ticket in violation of APD policy, and his later recounting of the story to a group of

---

this argument. (*Id.*) To the extent the alleged waiver is based on language in Rule 12(g), which precludes a party from making a subsequent motion under Rule 12 if the party omitted a defense or objection it had available from an earlier motion under Rule 12, Plaintiffs' argument is misguided. "Rule 12 by its own terms only precludes a party from advancing a subsequent motion raising the omitted defense under Rule 12; it does not preclude a subsequent Rule 56 summary judgment motion." *Robben v. Runyon*, No. 96-1154-JTM, 1998 WL 92237, at *5 (D. Kan. Feb. 25, 1998), *aff'd*, 203 F.3d 836 (10th Cir. 2000) (citing 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d, § 1387 (1990)). Plaintiffs cited no authority, nor can the Court find any, for the proposition that the City does not have standing to raise the defense.

cadets; and (2) Defendant Casaus's violation of APD policy when he allowed his girlfriend to accompany him while on-duty without the permission of his supervisors, and his alleged attempt to cover up his conduct. (Doc. 209 at 5–7.) Plaintiffs argue that based on these two prior occurrences, "a reasonable juror could conclude the City had enough evidence of prior acts by Adam Casaus exhibiting a disregard for the rules and acting in a manner in which seems clear he believed they do not apply to him, such that it was negligent in allowing to continue employment as a police officer." (*Id.* at 6.)

The City argues that neither these occurrences, nor any other evidence in the record, creates a genuine dispute of material fact that the City's negligence in supervising or retaining Defendant Casaus was a proximate cause of Plaintiffs' injuries. (*See* Docs. 183 at 26, 232 at 7–9.) Normally, "questions of proximate cause[ ] are questions of fact that must be reserved for a jury." *Lessard*, 168 P.3d at 169. The New Mexico Supreme Court warns that "[t]he issue of proximate cause should be removed from the fact finder only when the facts are undisputed and all reasonable inferences 'are plain, consistent, and uncontradictory.'" *Cross v. City of Clovis*, 755 P.2d 589, 593 (N.M. 1988) (quoting *Chavira v. Carnahan*, 423 P.2d 988, 990 (N.M. 1967)).

The facts relevant to this question are undisputed. *See id.* The Court finds there are no instances of misconduct in the record from which a jury could infer that the City's negligence in supervising or retaining Casaus led to Plaintiffs' injuries. *See id.* That Defendant Casaus allegedly lied on two occasions—the first time with respect to his girlfriend accompanying him on a call, and the second time with respect to following a car driving dangerously on the night of the fatal accident with the Browders—is insufficient to make a reasonable inference that the City's alleged negligence in either supervising or retaining Defendant Casaus after the first lie was a proximate cause of Plaintiffs' injuries. Moreover, there is no evidence that any of Defendant Casaus's

previous misconduct involved speeding or running red lights without a valid law enforcement objective.

The Court finds Plaintiffs' assertion regarding Casaus's "penchant for believing the rules did not apply to him" is too tenuous to be reasonable. No reasonable juror would find that the City's alleged negligence in supervising and/or retaining Defendant Casaus after his request to tear up a ticket, coupled with his conduct in allowing a girlfriend to accompany him on a call (along with his attempted cover-up of the incident), was an actual and proximate cause of Casaus's later conduct in speeding and running a red light with no valid law enforcement objective. *See id.* (citing *N.M. State Highway Dep't v. Van Dyke*, 563 P.2d 1150, 1152–53 (N.M. 1977) (internal citations omitted) (finding that a ruling as a matter of law "can be sustained only if reasonable minds could not differ on whether the [defendant's] failure to exercise reasonable care was an actual and proximate cause of [plaintiff's] death.")).

Plaintiffs also fail to demonstrate that the City's supervision of Defendant Casaus or its discipline of his misconduct was insufficient under the circumstances and/or the policies dictating such discipline. (*See* Doc. 232 at 7.) Nor do any of the instances of misconduct lend themselves to a finding that Casaus's earlier actions (and any alleged negligence by the City in supervising or retaining Casaus) were part of "a natural and continuous sequence [that] produce[d] the injury and without which the injury would not have occurred." *Chavira*, 423 P.2d at 990 (citation omitted). The Court finds, as a matter of law, that Plaintiffs have not alleged facts sufficient to show that the City's negligence in supervising or retaining Defendant Casaus proximately caused Plaintiffs' injuries. The Court grants Defendant's motion on this issue, and Plaintiffs' claim under Count III is hereby dismissed.

**C.     Plaintiffs' state claim based on a violation of their federal constitutional rights because of Defendant Casaus's allegedly reckless conduct is properly brought under § 41-4-12.**

The City also argues that Plaintiffs' claim in Count IV under § 41-4-12 should be dismissed for two reasons: first, because Plaintiffs did not specify a tort listed in the section; and second, because Plaintiffs allege that Defendant Casaus's conduct was reckless, but the City alleges that this section only waives immunity for intentional torts. (Doc. 183 at 25.) The New Mexico Tort Claims Act (NMTCA) "provides governmental entities and public employees acting in their official capacities with immunity from tort suits unless the Act sets out a specific waiver of that immunity." *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 916 P.2d 1313, 1316 (N.M. 1996) (citing § 41-4-4; *Abalos v. Bernalillo Cty. Dist. Attorney's Office*, 734 P.2d 794, 797 (N.M. Ct. App.), *cert. quashed*, 738 P.2d 907 (1987)). "Section 41-4-12 of the Act sets out the applicable waiver of immunity for the acts or omissions of law enforcement officers." *Id.* This section provides:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

§ 41-4-12. "Thus, in order to state a tort claim under the waiver of immunity set out in Section 41-4-12, a plaintiff must demonstrate that . . . the plaintiff's injuries arose out of either a tort enumerated in this section or a deprivation of a right secured by law." *Weinstein*, 916 P.2d at 1316.

Plaintiffs specified in paragraph 120 of their complaint that the City is liable for the damages caused when Defendant Casaus deprived Plaintiffs of their constitutional rights. (Doc. 1, Ex. A (Compl.) ¶ 120.) The deprivation of Plaintiffs' constitutional rights is one of the listed claims

12

set out in § 41-4-12. *See Weinstein*, 916 P.2d at 1316. Plaintiffs' fourth cause of action also incorporates the allegations from the preceding paragraphs of the Complaint, which set out in full the details regarding the violation of their constitutional rights. (Compl. ¶ 118.) The Court finds Plaintiffs have sufficiently alleged a violation of their federal constitutional rights.

The City's second argument raises a question that New Mexico courts have not explicitly examined.[6] The issue is whether reckless conduct, which is sufficient to maintain a cause of action for the deprivation of Plaintiffs' federal constitutional rights under § 1983, is also sufficient to state a claim under § 41-4-12. "Federal courts have the option of determining what a state court would do if confronted with the same issue, *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), or of certifying the question to the state appellate court for review, *see Allstate v. Stone*, 863 P.2d 1085, 1086 (N.M. 1993) . . . ." *Farm Bureau Mut. Ins. Co. v. Jameson*, 472 F. Supp. 2d 1272, 1280 (D.N.M. 2006) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 390–91 (1974) ("The decision to certify a question to the state supreme court 'rests in the sound discretion of the federal court.'")). After examining the purpose of the NMTCA and relevant authority, the Court believes that if the New Mexico Supreme Court were presented with this issue, it would find § 41-4-12 should be construed to waive immunity for a claim based on a law enforcement officer's reckless conduct, where the officer's conduct is sufficient to maintain a claim for a deprivation of the plaintiff's federal constitutional rights. The Court does not find certification is necessary.

---

[6] Only one case from the New Mexico Supreme Court has mentioned the question of whether reckless conduct is enough to waive immunity under § 41-4-12, but the circumstances of the case were distinguishable from those here. *See Cross v. City of Clovis*, 755 P.2d 589, 590 n.1 (N.M. 1988). The issue in *Cross* was whether, due to a police officer's negligence, a plaintiff could maintain a claim under § 41-4-12 for injuries sustained due to a third party's reckless conduct. *Id.* at 590, 593. The parties, however, did not raise the issue of whether the claim was properly brought under § 41-4-12, and the court declined to address it. *Id.* at 590 n.1 (citations omitted). The Court has found no other federal or state authority that speaks to the issue of whether reckless conduct is sufficient to state a claim for relief under § 41-4-12 where the claim is based on the deprivation of a plaintiff's federal constitutional rights.

When the New Mexico Supreme Court interprets the waivers of immunity in the NMTCA, it "first determine[s] the legislative intent in the enactment of the waiver and then interpret[s] the language of the waiver according to its plain meaning." *Smith v. Vill. of Corrales*, 713 P.2d 4, 6 (N.M. 1985), *cert. denied*, 713 P.2d 556 (1986) (citing *Redding v. City of Truth or Consequences*, 693 P.2d 594, 596 (N.M. Ct. App. 1984) (internal citations omitted)). The court does "not read into the statute language [which] is not there." *Id.* (quoting *Redding*, 693 P.2d at 596 (internal citation omitted)).

In enacting the NMTCA, the legislature sought to level the playing field for tort victims who would normally be unable to sue governmental entities or public employees under the doctrine of sovereign immunity. *See* § 41-4-2(A). "A plaintiff . . . may not sue a governmental entity or its employees for a damage claim arising out of violations of rights under the New Mexico Constitution unless the NMTCA contains a waiver of immunity." *Glover v. Gartman*, 899 F. Supp. 2d 1115, 1142 (D.N.M. 2012) (quoting *Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1222, 1251 (D.N.M. 2010) (subsequent and internal citations omitted)). According to the plain language of the statute, the same would hold true for damage claims arising out of violations of rights under the federal constitution. § 41-4-12.

The City argues that because the statute does not specifically waive immunity for reckless conduct in this section, and because the enumerated torts (assault, battery, false imprisonment, etc.) all require intentional behavior, the legislature must not have intended reckless conduct to be included in this waiver of immunity. (Doc. 183 at 25.) The language of the statute does not, however, expressly limit claims to those caused by intentional conduct, and the state supreme court refuses to "read into a statute language that is does not contain." *Cal. First Bank v. State*, 801 P.2d 646, 655 (N.M. 1990). Indeed, New Mexico courts have interpreted § 41-4-12 to include injuries

that arise when an officer's *negligent* behavior causes a third party to commit one of the enumerated torts. *See Methola v. Eddy Cty.*, 622 P.2d 234, 237–39 (N.M. 1980). The New Mexico Court of Appeals had read § 41-4-12 as excluding such a waiver of officer negligence, in part because "the word 'negligent' is not included" in the statutory language. *Id.* at 237. The supreme court expressly disagreed with the lower court's construction of the statute. *Id.* The City's argument—urging the Court to find that reckless conduct is not included in the waiver because the statute does not explicitly mention it—is somewhat similar to the court of appeal's invalid construction of § 41-4-12, and the Court finds that the supreme court would also disagree with such a construction. [7] *See id.*

The United States Supreme Court has found that something less than intentional behavior, including reckless behavior, is sufficient to show that a defendant violated a plaintiff's constitutional rights in some situations. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994) (adopting an objective test for the deliberate indifference standard, which is substantially equivalent to the civil law's definition of recklessness); *Lewis*, 523 U.S. at 849 ("recogniz[ing] the possibility that some official acts" categorized as reckless or grossly negligent "may be actionable under the Fourteenth Amendment"). Surely the New Mexico Legislature did not intend the waiver of immunity for deprivations of federal constitutional rights to be limited to those injuries that arise only from an officer's intentional conduct. There is no logical basis to read into the statute a narrow exception excluding those constitutional deprivations based on reckless conduct. "A party

---

[7] It seems obvious, but the Court takes time to note that "the New Mexico Legislature recognizes that a tort is separate and distinct from a constitutional deprivation[,]" and that "not all tortious conduct amounts to a deprivation of constitutional rights." *Wells v. Valencia Cty.*, 644 P.2d 517, 520 (N.M. 1982). Even if the listed torts in the first part of § 41-4-12 require intentional conduct, there is no support for the argument that such a requirement should be read into the last part of the section (waiving immunity for rights, privileges or immunities secured by the constitution and laws of the United States and New Mexico).

claiming an exception to the Tort Claims Act must establish that the exception is within the words of and the reason for the exception." *Cross*, 755 P.2d at 594 (Stowers, J., dissenting) (citing *Smith*, 713 P.2d at 7 (internal citations omitted)). This the City has failed to do.

Finally, the Court notes that "the clause in question is modelled on language in 42 U.S.C. Section 1983 . . . ." *Cal. First Bank*, 801 P.2d at 654. Section 1983 provides that "[e]very person who, under color of [state law, subjects another] to the deprivation of any rights . . . secured by the Constitution and laws [of the United States], shall be liable to the party injured . . . . " *Id.* (quoting § 1983; citing *DeVargas v. State ex rel. N.M. Dep't of Corr.*, 640 P.2d 1327, 1331 (N.M. Ct. App. 1981) ("[L]iability under Section 41-4-12 provision for violation of rights secured by the constitution and laws of the United States is consistent with liability under Section 1983 . . . ."), *cert. quashed by opinion*, 642 P.2d 166 (N.M. 1982)). Courts have consistently found reckless conduct is sufficient to demonstrate a violation of certain constitutional rights pursuant to § 1983. *See, e.g.*, *DeAnzona v. City & Cty. of Denver*, 222 F.3d 1229, 1235 (10th Cir. 2000) (determining that when a plaintiff alleges a substantive due process violation under a danger-creation theory, "the 'plaintiff must demonstrate[,]'" among other things, that the defendant "'acted recklessly in conscious disregard of'" an obvious or known risk) (quoting *Armijo ex rel. Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1262 (10th Cir. 1998) (internal citation omitted)). The New Mexico Legislature would not have intended to deny a plaintiff their rights under the federal constitution, even where those rights were violated by an officer's reckless, rather than intentional, conduct. *See Wells v. Valencia Cty.*, 644 P.2d 517, 520 (N.M. 1982) ("The denial of a plaintiff's federal law rights by a state would be in violation of the supremacy clause of the United States Constitution . . . ."). For the foregoing reasons, the Court finds that both the legislative intent and

the plain language of the statute—allowing claims for the deprivation of rights under the federal constitution—support the conclusion that Plaintiffs' claim under § 41-4-12 is allowed.

**V.     Conclusion**

The Court will:

(1)     deny the City's motion as moot with respect to Plaintiffs' claims in Count II and the negligent hiring and training claims in Count III;

(2)     deny the City's motion as to Count I;

(3)     grant the City's motion as to the remaining claims in Count III; and

(4)     deny the City's motion as to Count IV.

**THEREFORE,**

**IT IS ORDERED** that Defendant City of Albuquerque's Second Motion for Partial Summary Judgment Requesting Dismissal of Counts I, II, III, and IV (Section 41-4-12 Claim), and Memorandum in Support (Doc. 183) is **GRANTED IN PART** and **DENIED IN PART** as detailed in this opinion.

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**