**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

CHARLES BROWDER, in his individual
capacity and as Personal Representative
of The Estate of ASHLEY BROWDER,
LINDSAY BROWDER, and DONNA
BROWDER

        Plaintiffs,

v.                                                                         No. CIV 13-0599 RB/KBM

CITY OF ALBUQUERQUE, and ADAM
CASAUS in his individual capacity,

        Defendants.

**AMENDED[1] MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Relief and Sanctions Based on Intentional Spoliation of Evidence by Defendant City of Albuquerque, filed on February 4, 2016. (Doc. 149.) Jurisdiction arises under 28 U.S.C. § 1331. Having considered the submissions of counsel and relevant law, the Court will **GRANT IN PART** Plaintiffs' motion.

I.      **Procedural History and Statement of Facts[2]**

This case arises from a tragic traffic accident that occurred when Defendant Casaus's police vehicle collided with Plaintiff Lindsay Browder's vehicle. At issue in this motion for relief and sanctions is Defendant Casaus's police-issued cell phone. Defendant City of Albuquerque ("the

---

[1] This amended opinion and order reflects the Court's grant of the City's motion for reconsideration due to its inadvertent omission of the last page of the Verizon records exhibit. (*See* Docs. 217, 222, 224, 240.)

[2] The Court recites only that portion of the procedural history pertinent to this motion. The Court draws the relevant facts both from the parties' briefs and exhibits submitted for this motion (*see* Docs. 149, 169, 182), as well as from the briefs and exhibits the parties submitted for Plaintiffs' partial motion for summary judgment (*see* Doc. 146, 163, 181).

City") was on notice that Plaintiffs sought the cell phone as part of discovery, but somehow, the cell phone was lost or destroyed before Plaintiffs were allowed access to it.

###### A.        The Incident and the Investigation

Defendant Adam Casaus, a sergeant with the Albuquerque Police Department (APD), got off work around 11:00 p.m. on February 9, 2013, and stopped at the Bernalillo County Sheriff's Communication Center (BCSO dispatch) to visit his wife. (Doc. 8 at ¶ 26; Doc. 163, Ex. A at 67:19–21, 68:8–24.) He left BCSO dispatch at approximately 1:24 a.m. on February 10, 2013, allegedly intending to drive home. (Doc. 146, Ex. 1 at 61:2–23; Doc. 163 at 2, Ex. A at 76:24–25; Doc. 181 at 7.) Defendant Casaus maintains that on his way home, he spotted a vehicle that appeared to be speeding and failing to maintain its lane. (Doc. 163, Ex. A at 72:22–74:16; Doc. 181 at 7.) Defendant Casaus sped up and activated his emergency equipment, purportedly to stop the driver. (Doc. 163, Ex. A at 78:9–81:5; Doc. 181 at 7.) He never did stop the driver, as he collided with Plaintiff Lindsay Browder at the intersection of Eagle Ranch and Paseo Del Norte. (*See* Doc. 146, Ex. 1 at 84:25–87:23, 150:13–151:20.)

APD opened an investigation into the incident; Investigating Deputy Leonard Armijo of the Bernalillo County Sheriff's Office took the lead. (Doc. 146, Ex. 2 at 1–2.) Pursuant to this investigation, Defendant Casaus told Deputy Armijo that he used his work cell phone to call his wife immediately after the collision. (Doc. 169, Ex. A at 4; *see also* Doc. 146, Ex. 2 at 10.) Later, the APD conducted its own investigation into the collision, led by Detective Zamora with APD Internal Affairs. (Doc. 146, Ex. 8 at 14:6–10, 38:7–17.) Neither Deputy Armijo nor Detective Zamora was ever able to confirm the existence of another vehicle that Defendant Casaus asserts he was following. (Doc. 146, Ex. 3 at 92:4–11, Ex. 8 at 54:3–19, 38:7–17.) Area Commander Harold Medina reviewed the results of the investigations and made a finding that Defendant

Casaus was not being truthful about following another vehicle. (*See* Doc. 146, Ex. 11 at 46:3–49:4, 51:1–52:1.) Based on his review and understanding of the incident, Commander Medina recommended that Defendant Casaus's employment with the APD be terminated, adding a recommendation that Defendant Casaus was in violation of the standard operating procedure which requires APD personnel to be truthful during investigations. (*Id.* at 53:16–54:14.) Deputy Chief Allan Banks reviewed Commander Medina's report, ordered Internal Affairs to perform another interview with Defendant Casaus, and ultimately concurred with Commander Medina's recommendations. (*See id.* at 55:21–57:8.) Chief Schultz concurred with the findings and upheld the recommendation to terminate. (Doc. 146, Ex. 11 at 57:13–22, Ex. 13 at 35:20–36:23, 54:2–56:18, Ex. 14, Ex. 15.)

### B.      The Phone and the Lawsuit

Plaintiffs also believe Defendant Casaus fabricated his version of the events, and they contend there may be evidence (through text messages, calls, activity on social media, or otherwise) of his true intentions that night on his APD-issued cell phone. (Doc. 149 at 1–2.) On April 1, 2013, Plaintiffs' attorney (Mr. McAfee) sent four letters to the City of Albuquerque: one each to Mayor Richard Berry, then-APD Chief Raymond Schultz, City Clerk Amy Bailey, and City Attorney Katherine Levy. (Doc. 149 at 3, Ex. 1.) In the letter, Mr. McAfee put the City on notice of the Browder family's intent to pursue a claim again the City and requested preservation of certain documents and other items relevant to the Browders' claims, including Defendant Casaus's APD-issued cell phone. (*Id.*, Ex. 1.) Karen Mann, a representative from the administrator of the City's Risk Management Division, responded and assured Mr. McAfee that "Chief Schultz and the city's Legal Office understand[] the importance of preserving all evidence in the city's possession." (*Id.*, Ex. 2.)

The City asserts that no investigator ever collected Defendant Casaus's cell phones (Doc. 169 at 3, ¶ 9); instead, Defendant Casaus turned the APD-issued cell phone into the APD Warehouse Manager, Mr. Richard Campos, on March 28, 2013 (Doc. 169, Ex. D at 24:14–25:5). Mr. Campos testified that the cell phone "was placed into a bin with the rest of [Defendant Casaus's] equipment, maybe a duty belt holster, possibly his weapon. It sat there at least" until March 10, 2015. (Doc. 169, Ex. D at 25:5–12.) On March 10, 2015, Mr. Campos received a clearance form from the APD payroll department to "clear" Defendant Casaus's "property card." (*Id.* at 30:2–9.) The clearance form directs the warehouse staff "to separate the employee from his equipment." (*Id.* at 30:11–12.) As a result, the cell phone's phone number was removed from the phone and reissued to a MiFi hotspot. (*Id.* at 28:15–29:11, 30:12–23.) The physical phone became a spare backup phone, but Mr. Campos testified that from that point on, he would not have been able to track the phone after the phone number was reissued. (*Id.* at 30:18–19, 31:4–9, 32:8–18.) Mr. Campos asserts that while he has several phones of the same model in his possession, he is sure that none of them are Defendant Casaus's old phone. (*Id.* at 41:6–15.) Mr. Campos assumes, but has no specific knowledge, that Defendant Casaus's old phone was recycled sometime after March 10, 2015. (*Id.* at 32:19–33:11, 41:16–21.)

When Mr. Campos was deposed on November 10, 2015, he stated that any requests to preserve equipment would have come from Chief Schultz, but Mr. Campos never received any direction to preserve Defendant Casaus's cell phone. (*Id.* at 39:4–11.) The first time Mr. Campos saw Mr. McAfee's April 1, 2013 letter was sometime in the two weeks prior to his deposition. (*Id.* at 16:13–25.) If he had received a request to preserve the cell phone, he would have inventoried it and locked it in a bin. (*Id.* at 42:6–10.)

Plaintiffs filed suit in state court on May 15, 2013. (*See* Doc. 1.) Defendants removed the case to this Court on June 28, 2013. (*Id.*) The parties filed the Joint Status Report and Provisional Discovery Plan pursuant to Federal Rule of Civil Procedure 26(f) on September 3, 2013. (Doc. 12.) Defendant City of Albuquerque filed a motion for judgment on the pleadings on September 9, 2013 (Doc. 14), and Defendant Casaus filed a motion to dismiss on September 11, 2013 (Doc. 20). Pursuant to those two potentially dispositive motions, Defendants filed an unopposed motion to stay discovery on September 19, 2013, and the Court granted it the next day. (Docs. 24, 25.) After an adverse ruling on his motion to dismiss, Defendant Casaus moved to continue the stay while he appealed that ruling to the Tenth Circuit. (Doc. 37.) The Court granted the continued stay. (Doc. 40.) After the Tenth Circuit affirmed the denial of Defendant Casaus's motion to dismiss on June 24, 2015 (Doc. 42), the parties filed a second Joint Status Report on July 21, 2015 (Doc. 45), and the Court entered its Scheduling Order on July 22, 2015, setting a termination date for discovery of January 15, 2016 (Doc. 46 at 1).

Plaintiffs filed a Certificate of Service on the same day the Court entered its Scheduling Order, certifying that they had mailed their First Set of Interrogatories and Requests for Production to the City on July 21, 2015. (Doc. 49.) Plaintiffs' first request for production asked for Defendant Casaus's "APD-issued cellphone, including any and all data contained therein or otherwise stored offsite, whether electronically or in document form." (Doc. 149, Ex. 3 at Pls.' RFP 1.) In response to RFP 1, Defendant City of Albuquerque stated: "The cell phone has been re-issued and is now being used as a 'hot spot.' The actual cell phone can be inspected by contacting counsel for Defendant City of Albuquerque to make the necessary arrangements as to a specific day and time." (Doc. 149, Ex. 3 at Def. City's Resp. to Pls.' RFP No. 1; *see also* Doc. 60.) In its Third

Supplemental Answers to Plaintiffs' First Set of Interrogatories and Requests for Production

mailed on October 20, 2015 (*see* Doc. 82), the City supplemented its response as follows:

> As previously represented the cell phone had been re-issued and was being used as a "hot spot." However, the actual cell phone is not available for inspection as previously represented because it was not retained by the APD Property Division because they were not given the letter dated April 1, 2013 authored by Plaintiff's counsel or otherwise told to retain the phone. The phone was recycled with other phones which were inoperable as part of the normal course of business.

(Doc. 149, Ex. 3 at Def. City's Supp. Resp. to Pls.' RFP No. 1).

Verizon records (which the City has produced) do not reveal the content of any written

messages or media through which Defendant Casaus may have communicated. (Doc. 149 at 5.)

Plaintiffs allege that the City knowingly destroyed the cell phone to hide evidence. (*See id.* at 3.)

Plaintiffs now seek relief from the Court and sanctions against Defendant City of Albuquerque,

including: (1) striking its affirmative defenses; (2) ruling as a matter of law that Defendant Casaus

had no law enforcement-related justification whatsoever for his actions leading up to and including

the crash; and (3) an instruction to the jury providing that Defendant City of Albuquerque

intentionally destroyed the cell phone, and they can infer that, had it been preserved, the

information on it would have been indicative of an improper purpose and motivation on the part

of Defendant Casaus in driving as he did. (*Id.* at 5–6.)

## II.      The Law on Spoliation

Putative litigants are under an "obligation to preserve evidence . . . when the party has

notice that the evidence is relevant to litigation or when a party should have known that the

evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC* (*Zubulake 1*), 220

F.R.D. 212, 216 (S.D.N.Y. 2003) (quoting *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d.

Cir. 2001) (internal citation omitted); citing *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th

Cir. 2001) (internal citation omitted)); *see also U.S. ex rel. Baker v. Cmty. Health Sys., Inc.*, No.

CIV. 05-279 WJ/ACT, 2012 WL 12294413, at *2 (D.N.M. Aug. 31, 2012). The Tenth Circuit

specifies that this duty to preserve evidence arises at the time litigation is "imminent." *Baker*, 2012

WL 12294413, at *3 (citing *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (internal

citation omitted)). "Spoliation includes the intentional or negligent destruction or loss of tangible

and relevant evidence which impairs a party's ability to prove or defend a claim." *Baker*, 2012 WL

12294413, at *3 (quoting *U.S. ex rel. Koch v. Koch Indus., Inc.*, 197 F.R.D. 488, 490 (N.D. Okla.

1999)). To prevent spoliation, "the general rule is that '[o]nce a party reasonably anticipates

litigation, it must suspend its routine document retention/destruction policy and put in place a

"litigation hold" to ensure the preservation of relevant documents.'" *Baker*, 2012 WL 12294413,

at *2 (quoting *Zubulake 1*, 220 F.R.D. at 218). The same "litigation hold" also applies to tangible

evidence, such as the cell phone at issue here. *See, i.e.*, *Jordan F. Miller Corp. v. Mid-Continent

Aircraft Serv., Inc.*, 139 F.3d 912, 1998 WL 68879, at *7 (10th Cir. Feb. 20, 1998) (affirming

district court's imposition of sanctions on party for losing damaged landing gear, an examination

of which was crucial to the opposing party's defense).

Counsel for the parties have a continuing responsibility to ensure that the parties preserve

relevant information. *Baker*, 2012 WL 12294413, at *2 (citing *Zubulake v. UBS Warburg LLC

(Zubulake 2)*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004)). This responsibility obligates counsel to do

more than simply "notify all employees of a litigation hold and expect that the party will then

retain and produce all relevant information." *Id.* (quoting *Zubulake 2*, 229 F.R.D. at 432). Counsel

must go beyond mere notification and "take affirmative steps to monitor compliance[,]" to talk to

key employees in an effort to understand how evidence will be stored, to continually ensure that

the party is preserving relevant evidence. *Id.* (quoting *Zubulake 2*, 229 F.R.D. at 432) (emphasis

omitted). "At the end of the day, however, the duty to preserve and produce documents rests on the party." *Zubulake 2*, 229 F.R.D. at 436.

"Sanctions for spoliation serve three distinct remedial purposes: punishment, accuracy, and compensation." *Baker*, 2012 WL 12294413, at *3 (quoting *Koch*, 197 F.R.D at 490). "Spoliation sanctions are proper when '(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.'" *Turner*, 563 F.3d at 1149 (quoting *Burlington N. & Santa Fe Ry. Co. v. Grant,* 505 F.3d 1013, 1032 (10th Cir. 2007) (internal citation omitted)). "When deciding whether to sanction a party for the spoliation of evidence, courts have considered a variety of factors, two of which generally carry the most weight: (1) the degree of culpability of the party who lost or destroyed the evidence; and (2) the degree of actual prejudice to the other party." *Baker*, 2012 WL 12294413, at *3 (quoting *Patten v. Target Corp.*, No. 08-CV-01043-REB-KMT, 2009 WL 1279331, at *3 (D. Colo. May 6, 2009) (internal citation omitted)).

"Federal courts possess inherent powers necessary 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Jordan F. Miller Corp.*, 1998 WL 68879, at *3 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal citation omitted)). "Among those inherent powers is the ability to fashion an appropriate sanction." *Id.* (citations omitted). Court-fashioned spoliation sanctions include, for example: an award of attorney fees; an order that the culpable party produce related documents regardless of any claims of privilege or immunity, *Baker*, 2012 WL 12294413, at *18; excluding evidence or striking part of a party's proof; allowing the aggrieved party to question a witness in front of the jury about the missing evidence, *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1220 & n.6 (10th Cir. 2008) (citations omitted); and imposing costs for creating a substitute for spoliated data, *Koch*, 197

F.R.D. at 490–91. Such sanctions may be imposed even where evidence was lost or destroyed due to negligence, so long as the party seeking sanctions can show it suffered prejudice and the other side was on notice that the evidence should be preserved. *See Baker*, 2012 WL 12294413, at *3. "Sanctions for spoliation may also be designed to promote accurate fact finding by the court or jury." *Koch Ind.*, 197 F.R.D. at 490. Finally, where "the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith." *Turner*, 563 F.3d at 1149. "Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." *Id.* (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) (internal citation omitted)).

### III.    Discussion

#### A.    Timeliness and adequacy of the litigation hold

"When litigation is 'reasonably foreseeable' is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Baker*, 2012 WL 12294413, at *4 (quoting *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)). Here, Plaintiffs' attorney made it crystal clear that litigation was reasonably foreseeable: counsel for the City received actual, written notice that litigation was imminent in the April 1, 2013 letter. (Doc. 149, Ex. 1.) The wording of the letter left no room for doubt: "The purpose of this letter is to put you on notice that the Browder family . . . intends to pursue a claim in regards to the incident at issue." (*Id.*) *See also Turner*, 563 F.3d at 1149. Mr. McAfee did not simply give notice of impending litigation, he actually requested a litigation hold, detailing the specific evidence Plaintiffs would seek as part of their lawsuit. (Doc. 149, Ex. 1 at 2–3.) The first item on the list is the APD-issued cell phone. (*Id.* at 2.)

From at least April 1, 2013 forward,[3] counsel for the City had a duty to ensure that City employees—including the Warehouse Manager who had physical custody of the phone—would preserve all evidence relevant to the incident. *See Baker*, 2012 WL 12294413, at *2. The City contends that Mr. McAfee's "letter was not forwarded to Mr. Campos and he was not otherwise instructed to keep the phone." (Doc. 169 at 11.) It is unclear whether the City is struggling to offer an excuse for the destruction of evidence, or whether it is trying to shift its burden of communicating with key employees to Plaintiffs' attorney. If it is the latter, the City's argument is contrary to established law. *See Baker*, 2012 WL 12294413, at *2. If it is the former, the Court finds that the City had little to no excuse for losing or destroying the phone. Perhaps if the City had not received written notice specifying that Plaintiffs' attorney would seek to physically inspect the cell phone, then the Court could find the City's conduct was merely negligent. But where the City was put on actual notice that it should preserve the cell phone itself, and not only the Verizon records, the failure to direct the warehouse manager to keep the phone smacks more of gross negligence.[4]

The City then argues that their "duty to preserve evidence 'does not extend indefinitely.'" (Doc. 169 at 10 (quoting *Gaffield v. Wal-Mart Stores E., LP*, 616 F. Supp. 2d 329, 337

---

[3] The Court would find that litigation was "reasonably foreseeable" the moment the City became aware that a police officer was involved in a fatal traffic accident.

[4] There are very few instances where courts have clearly defined the continuum of culpability "in the context of discovery misconduct." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 463 (S.D.N.Y. 2010). A leading treatise describes gross negligence "as a failure to exercise even that care which a careless person would use." *Id.* (quoting W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 34 at 211–12 (5th ed. 1984)). One court has held that "the failure to issue a *written* litigation hold constitutes gross negligence because that failure is likely to result in the destruction of relevant information." *Id.* (citations omitted). The Second Circuit later "reject[ed] the notion that a failure to institute a 'litigation hold' constitutes gross negligence *per se*[,]" *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012), and this Court also declines to make such a blanket finding. In this case, though, where the City had written notice that Plaintiffs would seek to examine the cell phone, the Court finds even a "careless person" would have notified the Warehouse Manager to preserve the phone. That no one from the City—counsel, Chief Schultz, et cetera—made any effort to preserve the cell phone or its contents, gives the Court reason to suspect that there was at least some consciousness of a weak case.

(N.D.N.Y. 2009) (internal citation omitted)).) The Court finds this argument disingenuous, since the City never issued an adequate litigation hold in the first place. Regardless, there is little support for the City's assertion that Plaintiffs' attorney "had an adequate opportunity to inspect the evidence prior to destruction." (*Id.* at 10 (citing *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 458 (2d Cir. 2007).) The City goes so far as to charge Plaintiffs with "present[ing] no information whatsoever as to what efforts, if any, they made to inspect the cell phone from the time it was turned in on March 28, 2013 until they filed suit on May 15, 2013." (*Id.* at 9.) Yet under Local Rule 26.4, Plaintiffs were not allowed "to seek discovery under these rules or the Federal Rules of Civil Procedure before the parties have conferred as required by Fed. R. Civ. P. 26(f) except by agreement of all parties or by Court order." D.N.M. LR-Civ. 26.4. The parties did not file the Joint Status Report and Discovery Plan that came out of the Rule 26(f) meeting until September 3, 2013. (Doc. 12.) Plaintiffs could not have sought discovery prior to that time. *See* D.N.M. LR-Civ. 26.4. It is true that almost two years passed between the time Plaintiffs filed the lawsuit and the time Mr. Campos received the clearance form and the City lost track of the cell phone. Of those two years, however, Plaintiffs had approximately two *weeks* in which to conduct discovery when the City still had custody of the phone: from September 3, 2013, to the time Defendants filed a motion to stay discovery on September 19, 2013. (Docs. 12, 24, 25.) The stay on discovery continued through at least June 24, 2015, when the Tenth Circuit issued their opinion. (Doc. 42.) By that time, the City had already lost or destroyed the cell phone. For the forgoing reasons, the Court finds that the City's litigation hold was inadequate.

**B.**     **Spoliation Sanctions**

"The two most important factors" the Court considers "in determining spoliation sanctions are (1) culpability of the offending party; and (2) actual prejudice to the other party." *Baker*, 2012 WL 12294413, at *12 (citation omitted).

**1.**     **Culpability**

"Culpability is the degree of fault to be assigned to the offending party." *Id.* "[T]he 'destruction of potentially relevant evidence obviously occurs along a continuum of fault— ranging from innocence through the degrees of negligence to intentionality.'" *Mariposa Farms LLC v. Westfalia-Surge Inc., et al.*, 03cv00779 JEC/LAM (Doc. 193 at 5, Feb. 3, 2005 (quoting *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009)).) Here, it was obvious from the night of the fatal accident that litigation was likely. The City then received written notice that litigation was imminent, along with a specific request to preserve the cell phone.

The City points out that the cell phone is only mentioned one time in Plaintiffs' complaint. (Doc. 169 at 3, ¶ 7, 13.) It also explains that the "[i]nvestigators certainly would have collected cell phones if they felt [the phones contained] evidence pertinent to their investigation to charge Mr. Casaus with a crime." (*Id.* at 8.) Not only does this not excuse the City's failure to put an adequate litigation hold on the phone, it is also not up to Defendants to decide what evidence is or is not relevant to Plaintiffs' case. "As one court stated, '[t]he argument of an accused spoliator that it did not violate its duty to preserve evidence because it retained'" what it considered relevant and only destroyed that it found to be irrelevant "rings particularly hollow. The ultimate decision of what is relevant is not determined by a party's subjective assessment filtered through its own perception of self-interest." *Baker*, 2012 WL 12294413, at *11 (quoting *Goodman v. Praxair*

*Servs. Inc.*, 632 F. Supp. 2d 494, 517 n.12 (D. Md. 2009)). Moreover, the City itself says that the investigators were putting together evidence for a criminal case; therefore, they may not have fully considered what evidence would be helpful in a civil case. (*See* Doc. 169 at 8.)

The City contends that Plaintiffs have "presented no evidence of *anyone* specifically directing that the APD cell phone be disposed of." (Doc. 169 at 1.) There are two flaws in this argument. First, there is evidence that *payroll* directed the warehouse manager to separate Defendant Casaus from his equipment. When he received the clearance form, the warehouse manager automatically changed the phone number on Casaus's work cell phone, and the physical phone became a back-up. There is no testimony on who from payroll sent the clearance form to the warehouse manager (or who directed payroll to do so), or on why payroll decided to send the clearance form to the warehouse manager at that time. Second, and more importantly, the record is *also* devoid of any effort taken by counsel or the City to preserve this evidence as part of an adequate and continuing litigation hold, as was their duty. The Court has to wonder whether the direction from payroll to clear Casaus's equipment, or the failure to issue an adequate and continuing litigation hold, provides evidence of the City's (and counsel's) knowledge of a weakness in the case.

Perhaps the most damning factor that goes to the City's culpability in losing or destroying the cell phone is that the information contained on the phone may have provided evidence that goes to the question of whether or not Defendant Casaus had a valid law enforcement justification for driving in the manner he did on the night of the collision. The Tenth Circuit held earlier in this case that if Defendant Casaus was truly pursuing a vehicle that was operating in a dangerous manner, "this could constitute 'reasonable justification for conduct in service of a legitimate governmental objective . . . .'" *Browder v. City of Albuquerque*, 787 F.3d 1076, 1081 (10th Cir.

2015). If he fabricated the story of the vehicle, there may be room for a finding that his behavior was "arbitrary[] or conscience-shocking." *Id.* at 1079 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846, 847 (1998) (internal citations omitted)). The cell phone, therefore, may have provided evidence that would have gone to (at least) Defendant Casaus's affirmative defenses. The Court finds it matters not that the cell phone goes to Defendant Casaus's—and not the City's— defense, because as Plaintiffs indicate in their reply, "the City is responsible for any damage award incurred resulting from the individual conduct of Adam Casaus." (Doc. 182 at 6.)

The Court agrees with the City that Plaintiffs fail to identify any evidence that anyone from the City *specifically* instructed Mr. Campos to discard the cell phone. (Doc. 169 at 11.) The Court disagrees that absent such evidence, the City's conduct in failing to preserve the phone amounted to mere negligence. As mentioned previously, the Court finds the City was at least grossly negligent in ignoring Mr. McAfee's letter seeking to inspect the phone, and in failing to ensure that all key employees were aware of the litigation hold. Along with the statement from Defendant Casaus that he used his work phone on February 10 (and the fact that he showed it to Deputy Armijo), the apparently missing Verizon records, and the direction from payroll to separate Casaus from his equipment (when the obvious result was a failure to preserve the cell phone), the Court has reason to believe that the City, conscious of a weakness in its case, was at least grossly negligent in failing to preserve potentially critical evidence.

### 2.    Prejudice

The City contends that Plaintiffs cannot establish that (1) the cell phone even contained evidence, and/or (2) the loss of the cell phone prejudices their case, because they cannot

demonstrate what information was on the phone.[5] (Doc. 169 at 7–8, 12–14.) The City also argues

that the loss of the phone is not prejudicial, because Plaintiffs were able to bring a partial motion

for summary judgment without the benefit of the information on the phone. (*Id.* at 13.) In light of

the circumstances, the Court finds the City's arguments unavailing. Because of the City's

inadequate litigation hold, neither Plaintiffs nor the Court will ever know how important the cell

phone may have been to Plaintiffs' case. That Plaintiffs brought a motion for summary judgment

without relying on the information contained within the phone does not make their request for the

phone immaterial or irrelevant. *See Baker*, 2012 WL 12294413, at *13.

The data Plaintiffs could have retrieved from physically inspecting the cell phone is not

available by any other means. The only testimony Plaintiffs have to work with at this point is that

of Defendant Casaus, who has a self-serving reason for maintaining his story about following a

vehicle prior to the collision. The incomplete Verizon records do not give Plaintiffs any substantive

information about what Defendant Casaus may have communicated (through texts or otherwise).

The *Baker* court noted that "prejudice is shown when the destroyed evidence goes to a critical

issue and the evidence at hand is conflicting." *Id.* at *14. Here, Defendant Casaus's testimony

about following a vehicle conflicts with testimony of the eyewitnesses and the findings of the

internal investigations. The Court finds that there is sufficient evidence of prejudice to Plaintiffs

from the loss of the cell phone.

---

[5] The circular logic inherent in the City's argument is dizzying. Mr. McAfee gave the City notice of imminent litigation and directed the City to preserve the cell phone so Plaintiffs could have access to the information contained therein. The City lost the phone and now defends this spoliation motion on the basis that Plaintiffs do not know what was on the phone. Allowing the City's argument to prevail would be to encourage spoliation rather than preventing or deterring it.

### 3.    Sanctions

The City's failure to issue an adequate litigation hold, to preserve evidence specifically listed in Mr. McAfee's letter, to communicate with key employees who had control over the evidence, to "ensure that proper procedures were being followed, and . . . to monitor the litigation hold all indicate that it is more probable than not that relevant evidence was destroyed." *Id.* at *17. The City has offered no legitimate excuse for the loss or destruction of the cell phone, and no persuasive argument that they should not be sanctioned. While the Court cannot find that the City's "actions amounted to bad faith[6] or intentional misconduct, . . . it is clear that" the City's failure to instigate an adequate litigation hold "threatens the integrity of the judicial process" and warrants the imposition of sanctions. *Id.*

In fashioning sanctions for spoliation of evidence, the Court is mindful of the purposes of such consequences: sanctions should punish, promote fact-finding accuracy, and compensate the aggrieved party. *See Baker*, 2012 WL 12294413, at *3 (citation omitted). Accordingly, the Court finds the following sanctions are appropriate:

(1)    The City will produce any and all documents relevant to the APD-issued cell phone, whether that information was gathered during the internal affairs investigation or in the course of preparation for the criminal trial or this civil suit, that either Defendant is currently withholding

---

[6] The Court has not found a clear definition of bad faith in the context of discovery misconduct. From past cases, however, most courts hold that there must be some showing of willful destruction of evidence. *See, e.g.*, *Philips Electronics N. Am. Corp. v. BC Technical*, 773 F. Supp. 2d 1149, 1163 (D. Utah 2011) (finding bad faith where, within hours of a court order directing the defendant to stop deleting files and to turn over certain documents to the plaintiff, "BCT executives and employees began deleting a massive number of files from their computers" (citation omitted); *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 109, 127–28 (S.D. Fla. 2009) (finding bad faith when there was evidence that the defendant's attorney "ordered the immediate destruction of documents" relevant to the complaint). *See also Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 747–48 (8th Cir. 2004) (noting that "while this case tests the limits of what we are able to uphold as a bad faith determination, the district court did not abuse its discretion by sanctioning Union Pacific's prelitigation conduct of destroying the voice tape"; defendant adhered to its routine practice of disposing of voice tapes after 90 days even where litigation was reasonably anticipated); *Bright v. United Corp.*, No. 2007/80, 2008 WL 2971769, at *6 (V.I. July 22, 2008).

16

under a claim of work product immunity or attorney-client privilege. The Court will allow Defendants to redact any information that is not related to the APD-issued cell phone;

(2)    Plaintiffs will be allowed to present evidence that they asked the City to preserve the phone, but the City lost the phone, and along with it, any opportunity for the jury to learn what evidence might have been on it that would have reflected on Defendant Casaus's story or credibility. Because the Court has found gross negligence, rather than bad faith, on the part of the City, it finds that a jury instruction requiring an adverse inference would be inappropriate. However, the Court will give an instruction that allows the jury to make any inference they believe appropriate in light of the spoliation. The Court leaves it to counsel to craft a jury instruction they can agree on. Failing agreement, the Court will craft its own such instruction; and

(3)    The City will pay all reasonable expenses, including attorney fees, Plaintiffs incurred in bringing this motion.

**THEREFORE,**

**IT IS ORDERED** that Plaintiffs' Motion for Relief and Sanctions Based on Intentional Spoliation of Evidence by Defendant City of Albuquerque (Doc. 149) is **GRANTED IN PART** as outlined above.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**